**PACIFIC AND SOUTHERN COMPANY, INC., d/b/a WXIA–TV, Plaintiff-Appellee, Cross-Appellant,**

v.

**Carol DUNCAN, d/b/a TV News Clips, Defendant-Appellant, Cross-Appellee.**

**No. 83–8782.**

United States Court of Appeals, Eleventh Circuit.

.Oct. 26, 1984.

Rehearing and Rehearing En Banc Denied Dec. 7, 1984.

L. Ray Patterson, Atlanta, Ga., for defendant-appellant, cross-appellee.

James C. Rawls, V. Robert Denham, Jr., Atlanta, Ga., for plaintiff-appellee, cross-appellant.

David R. Aufdenspring, Atlanta, Ga., amicus curiae, for CBS, Inc.

Before FAY and JOHNSON, Circuit Judges, and YOUNG *, District Judge.

JOHNSON, Circuit Judge:

Pacific and Southern Company, the owner of a television station, charges that Carol Duncan, d/b/a TV News Clips, has infringed its copyright by videotaping its news broadcasts and selling the tapes to the subjects of the news reports. We hold that the appellant has violated the copyright laws because her activities do not constitute "fair use" of the material. We also conclude that the television station is entitled to a permanent injunction preventing the appellant from continuing to infringe its copyright. Accordingly, we affirm in part and reverse in part.

## I. Facts

Pacific and Southern Company does business as WXIA–TV, a television station in Atlanta, Georgia. It broadcasts four local news programs each day and places a notice of copyright at the end of each newscast. A program consists of self-contained news stories originating outside the studio and linked together by live commentary from the anchor persons, along with weather reports and shorter news reports originating from the studio itself. WXIA records the entire program on videotape and audiotape. It retains a written transcript of the program for a year and the audiotape for an indefinite period of time; it also maintains videotape copies of all the news stories taped before broadcast and stories originating live from a location outside the studio. The station erases the videotape of the entire program after seven days, a practice that destroys any record of the visual element of segments of the show broadcast live from within the studio.

WXIA does not currently market videotape copies of its news stories. Nevertheless, some people ask the station for a chance to view a tape at the station or to purchase a copy for personal use. WXIA has always honored requests to view tapes and usually allows persons to buy the tapes they want.[1] The revenue from tape sales is a small portion of WXIA's total profits.

Carol Duncan operates a business known as TV News Clips, a commercial enterprise belonging to a nationwide association of news clipping organizations.[2] TV News Clips videotapes television news programs, identifies the persons and organizations covered by the news reports, and tries to sell them copies of the relevant portion of the newscast.[3] It does not seek the permission of WXIA or any other broadcaster before selling the tapes, nor does it place a notice of copyright on the tapes. A label on each tape does say, however, that it is "for personal use only not for rebroadcast." TV News Clips erases all tapes after one month.

---

* Honorable George C. Young, U.S. District Judge for the Middle District of Florida, sitting by designation.

1. The tapes cost one hundred dollars. WXIA will not sell tapes to political candidates because the sale could appear to be an endorsement or other show of support for the candidate. Out of a similar concern over favoritism, the station asks for a subpoena before selling a tape that will be used in litigation.

2. TV News Clips belongs to the International Association of Broadcast Monitors, an organization of 20 to 30 members. Ms. Duncan is a past president of the association.

3. The customers pay $65 for an initial purchase and $25 for subsequent purchases.

This case began when TV News Clips sold a copy of a news feature to Floyd Junior College, the subject of a story aired by WXIA on March 11, 1981. WXIA obtained the tape purchased by Floyd Junior College, registered its copyright,[4] and brought this action to obtain damages for the infringement of its copyright and an injunction preventing unauthorized copying and sales of its news program. The district court, 572 F.Supp. 1186, found that the news feature was protected by the copyright laws and that TV News Clips had not made "fair use" of the material. It rejected the fair use defense without reaching the four factors listed in 17 U.S.C.A. § 107 (1977), because TV News Clips had not met its threshold burden of showing that its activity served a purpose such as "criticism, comment, news reporting, teaching ... scholarship, or research," categories listed in the preamble to Section 107. Yet despite finding that TV News Clips had clearly violated WXIA's copyright, the district court denied the request for an injunction for three reasons. First, the sales did not seriously threaten WXIA's creativity, so an injunction would not significantly further the main objective of the copyright laws, fostering creativity. Second, the court feared that an injunction would threaten First Amendment values served by the increased public availability of the news made possible by TV News Clips. Finally, the court found that WXIA had abandoned its copyright on several portions of the newscasts; it declined to formulate a decree that would distinguish between the abandoned and unabandoned portions.

II. "Fair Use" Defense to Statutory Liability

■ The news feature broadcast by WXIA undoubtedly falls within the protection of the copyright laws. The editorial judgment used to present effectively the events covered by the broadcast made it an "original" work of authorship, *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 95 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978), and the feature became "fixed" in a tangible medium when it was recorded at the time of transmission.[5] Thus, it met the requirements of 17 U.S. C.A. § 102 (1977). The fact that the infringing tape is the only exact copy of the transmission still in existence does not nullify the copyright. The statute requires only that the original work be "fixed" for a period of "more than transitory duration," not for the entire term of the copyright. 17 U.S.C.A. §§ 101, 102 (1977).

■ A copyright grants to the owner several exclusive rights, including the right to reproduce the copyrighted work and to distribute copies to the public. The courts have, however, developed over the years the concept of "fair use" to describe some limited and useful forms of copying and distribution that are tolerated as exceptions to copyright protection.[6] The 1976 Copyright Act codified this judicial doctrine at 17 U.S.C.A. § 107 (1977) without significantly altering it. The statute divides into a "preamble" and a list of factors to consider during the search for fair use:

> [T]he fair use of a copyrighted work, including such use by reproduction in copies ... for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in

---

4. WXIA does not normally register the copyright for its news programs.

5. The feature in this case was prerecorded, but the final product broadcast by WXIA included a live introduction by the anchor person and graphics (stating the reporter's name and location) superimposed over the pretaped version.

6. TV News Clips analogizes itself to a newspaper clipping service or an archive, both of which qualify for an exemption apart from the fair use doctrine. The statute defines an archive with some precision, and TV News Clips does not match the description. 17 U.S.C.A. § 108 (1977). Likewise, it cannot be considered a newspaper clipping service because it does not purchase the copy that it sells to its clients. 17 U.S.C.A. § 109 (1977).

any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C.A. § 107 (1977).

TV News Clips argued in the district court that its use of the news broadcast was a fair use of the material because it served an important societal interest in full access to the news. The court rejected the fair use defense without considering the four statutory factors because TV News Clips did not copy and distribute the material for purposes such as the ones listed in the preamble. The district court reasoned that since TV News Clips' use was not "inherently productive or creative," like each of the preamble uses, analysis of the four factors was unnecessary.

We agree with TV News Clips that the district court should have considered the four factors set out in the statute. The statute uses mandatory language to the effect that in a fair use determination, the "factors to be considered *shall* include" (emphasis added) the four listed.[7] The preamble merely illustrates the sorts of uses likely to qualify as fair uses under the four listed factors.

 The approach taken by the district court impedes the ability of the fair use doctrine to function as a "rule of reason." Fair use allows a court to resolve

tensions between the ends of copyright law, public enjoyment of creative works, and the means chosen under copyright law, the conferral of economic benefits upon creators of original works. Where strict enforcement of the rights of a copyright holder under 17 U.S.C.A. § 106 (1977) would conflict with the purpose of copyright law or with some other important societal value, courts should be free to fashion an appropriate fair use exemption. The district court fashioned a per se rule that a use must be inherently productive or creative before it can be a fair use, but a doctrine meant to resolve unforeseen conflicts of values should not turn on such a narrow inquiry. The Supreme Court, in its recent fair use decision in *Sony Corp. v. Universal City Studios,* — U.S. —, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984), did not conduct any preliminary tests before analyzing the four statutory factors. It expressly refused to look to productivity alone in determining what constituted a fair use. *Id.* at n. 40. Hence, the Supreme Court's recent application of the doctrine, as well as the traditional purpose of fair use, points out the error of the district court's reasoning.

 Despite the district court's erroneous interpretation of the law, we need not remand this case for further factfinding. The district court resolved all the issues of fact necessary for us to conclude as a matter of law that TV News Clips' activities do not qualify as a fair use of the copyrighted work. *See Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc.,* 626 F.2d 1171, 1175 (5th Cir.1980) (analyzing usage under the four statutory factors where district court had made findings under an erroneous view of controlling legal principles).[8]

---

7. As a result, the House Committee on the Judiciary may have overstated its intention to leave the doctrine of fair use unchanged, because the statute clearly offers new guidance for courts considering fair use defenses. It establishes a minimum number of inquiries that a court must carry out, even if it leaves to the courts how to assign relative weights to each factor and how to supplement the first four factors. See House

Report No. 94–1476, U.S.Code Cong. & Ad. News 1976, p. 5659.

8. Fair use is probably best characterized as a mixed question of law and fact that can be decided by an appellate court if the trial court has found facts sufficient to evaluate each of the four statutory factors. *Cf. Meeropol v. Nizer,* 560 F.2d 1061, 1070 (2d Cir.1977) (trial court erroneously determined fair use as a matter of

 The purpose and character of TV News Clips' use of WXIA's work heavily influences our decision in this case. TV News Clips copies and distributes the broadcast for unabashedly commercial reasons despite the fact that its customers buy the tapes for personal use. The district court characterized TV News Clips as a "full-fledged commercial operation." 572 F.Supp. at 1189 n. 1. TV News Clips denies that its activities have a commercial purpose; instead, it says that its purpose is "private news reporting," meant to provide the public with a record of news reports. Of course, every commercial exchange of goods and services involves both the giving of the good or service and the taking of the purchase price. The fact that TV News Clips focuses on the giving rather than the taking cannot hide the fact that profit is its primary motive for making the exchange.

This commercial nature of the use militates quite strongly against a finding of fair use, for the Supreme Court emphasized in *Sony, supra,* that a commercial purpose makes copying onto a videotape cassette "presumptively unfair." 104 S.Ct. at 792. Even before the Supreme Court's decision, many federal courts had found the commercial nature of a use especially significant, if not determinative. *See MCA, Inc. v. Wilson,* 677 F.2d 180 (2d Cir.1981); *Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc., supra,* at 1175–76; *Association of American Medical Colleges v. Mikaelian,* 571 F.Supp. 144, 153 (E.D.Pa.1983) (Commercial purpose is not determinative, but "a court should not strain to apply the fair use defense when it is being invoked by a profit-making defendant").

We also note that TV News Clips' use is neither productive nor creative in any way. It does not analyze the broadcast or improve it at all. Indeed, WXIA expressed concern over the technical inferiority of the tapes. TV News Clips only copies and sells. As the uses listed in the preamble to

Section 107 indicate, fair uses are those that contribute in some way to the public welfare. Until recently a few courts had automatically considered unproductive or uncreative uses to be unfair. *Universal City Studios, Inc. v. Sony Corp. of America,* 659 F.2d 963 (9th Cir.1981), *rev'd,* —— U.S. ——, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984); *Rubin v. Boston Magazine Co.,* 645 F.2d 80 (1st Cir.1981); *Dow Jones & Co., Inc. v. Board of Trade,* 546 F.Supp. 113 (S.D.N.Y.1982). Although the Supreme Court has rejected "productive use" as an absolute prerequisite to a defense of fair use, it has recognized that the distinction between productive and unproductive uses could be "helpful in calibrating the balance." *Sony,* 104 S.Ct. 795, n. 40. The unproductive nature of TV News Clips' use affects the balance in this case.

The fourth fair use factor, the effect on the potential market for the work, is closely related to the first. By examining the effect of a use, a reviewing court can measure the success of the original purpose and single out those purposes that most directly threaten the incentives for creativity which the copyright tries to protect. Some commercial purposes, for example, might not threaten the incentives because the user profits from an activity that the owner could not possibly take advantage of. *See Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc., supra.* But in this case, TV News Clips uses the broadcasts for a purpose that WXIA might use for its own benefit. The fact that WXIA does not actively market copies of the news programs does not matter, for Section 107 looks to the "potential market" in analyzing the effects of an alleged infringement. Copyrights protect owners who immediately market a work no more stringently than owners who delay before entering the market. TV News Clips sells a significant number of copies that WXIA could itself sell if it so desired; therefore, TV News Clips competes with WXIA in a potential market and thereby injures the television

law before allowing case to go to jury because there were no factual findings regarding first or

fourth statutory factors).

station. This evidence is reinforced by a presumption established in *Sony* that a commercial use naturally produces harmful effects. 104 S.Ct. at 793. The actual harmful effect, along with the presumption, undermines any fair use defense.

■ The third factor directs our attention to the amount and substantiality of the portion used in relation to the copyrighted work as a whole. The Floyd Junior College story stands alone as a coherent narrative, and WXIA saves it as a distinct unit for future reference apart from the rest of the March 11 broadcast. The Register of Copyrights issued a certificate of copyright for the Floyd Junior College segment and for the entire broadcast. Moreover, the district court found that WXIA had properly registered the story and the whole broadcast.[9] We agree with the district court that the feature stands alone as a copyrighted work in this case.[10] Hence, TV News Clips copied an entire work. And even if the story could not stand independent of the entire newscast, we could not ignore the fact that TV News Clips tapes virtually all of the broadcast on a daily basis. By bringing a suit for injunctive relief as well as damages, WXIA is challenging the entire practice of copying and selling news stories, not just the sale of the Floyd Junior College story.[11] Because TV News Clips uses virtually all of a copyrighted work, the fair use defense drifts even further out of its reach. *See Marcus v. Rowley*, 695 F.2d 1171 (9th Cir.1983).

■ Finally, the second factor calls on us to analyze the nature of the copyrighted work. This is the only factor that arguably works in favor of TV News Clips. The importance to society of the news could affect the definition of a fair use for a number of reasons.[12] But the courts should also take care not to discourage authors from addressing important topics for fear of losing their copyright protections. The necessarily limited impact of this second factor, along with the commercial and unproductive purpose of the use, the injury to the potential market, and the substantial amount of copying, leads us to conclude that TV News Clips has not made fair use of the protected work.

■ TV News Clips urges us to consider a fifth factor in evaluating its claim of fair use. It points to WXIA's status as a governmental licensee, with a duty "to provide public access to newscasts," and argues that the fair use doctrine should be employed here to prevent WXIA from us-

9. TV News Clips contends that the district court erred in its finding that WXIA had properly registered the Floyd Junior College story because WXIA had deposited, pursuant to 17 U.S.C.A. § 408(b) (1977), the copy made by News Clips. This invalidated the registration, it argues, because the copy was not fixed "under authority of the author." It is true that a work must be fixed under authority of the author in order for the protections of copyright to take effect. 17 U.S.C.A. § 101 (1977). But the tape that "fixes" a broadcast need not be the same tape that is deposited for registration.

10. This case differs from *Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc., supra,* where the court held that the cover of a magazine was not a copyrighted work apart from the whole magazine. There was no evidence in that case that the cover had been registered apart from the magazine or that they were stored or used separately.

11. In addition, we mention that a small portion of a work may be especially significant. The single story involving a particular subject is by far the most significant portion of the newscast for that potential customer.

12. The Supreme Court has mentioned that use of a news program may give rise to a fair use defense more easily than use of a full-length motion picture. *Sony, supra,* 104 S.Ct. at 795, n. 40. The Court does not fully explain this distinction, but the context suggests that the large secondary market for motion picture copies makes fair use less appropriate in that context. As discussion of the fourth factor revealed, significant commercial harm is present in this case. Another court found that the great public interest in the contents of a book (the memoirs of Gerald Ford) called for application of the fair use doctrine. *Harper & Row, Publishers, Inc. v. National Enterprises,* 723 F.2d 195 (2d Cir.1983). But the *Harper & Row* court also relied on other factors, particularly the fact that the alleged infringer used material from the book that was for the most part not copyrightable at all. Furthermore, the public interest in the average news story is far less than the interest in presidential memoirs.

ing the copyright laws to restrict public access in violation of its duties as a government licensee. WXIA is correct in contending that its duties as a public trustee do not go as far as TV News Clips claims. The cases cited by the appellant, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *Columbia Broadcasting System v. Democratic National Committee*, 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973); *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); and *Muir v. Alabama Educational Television Commission*, 656 F.2d 1012, 1017 (5th Cir.1981), *on rehearing*, 688 F.2d 1033, *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983), indicate, if only by implication, that broadcast licensees and the press generally have a duty to provide public service. That duty finds at least partial expression in the fair use doctrine. But it is a long way from this proposition to TV News Clips' position that a licensee violates the public trust by enforcing its copyright against persons other than members of the press. WXIA has chosen to produce a news program and allows anyone interested to view the program after its broadcast. Certainly it has fulfilled its public obligations by doing this much. Therefore, WXIA's status as a public trustee does not change our evaluation of the fair use claim.

### III. Constitutional Limits on Statutory Liability

 The appellant claims that even if its fair use defense fails, the First Amendment protects its activity. WXIA, when it enforces the copyright, allegedly violates the First Amendment in two different ways. First, it destroys and suppresses evidence of possible use in a defamation

action against itself, and second, it denies the public its right of access to broadcast material. An effort to discourage defamation suits might be an abuse of the copyright laws and a violation of the First Amendment, but that possibility is entirely imaginary in this case. As for the right of public access, we acknowledge that the public has a limited interest in "making television broadcasting more available." *Sony, supra,* 104 S.Ct. at 795. This public interest might be threatened if WXIA absolutely refused to allow the public to view recordings or scripts of its broadcasts. But as the Supreme Court made clear in *Sony*, the public interest in broadcast availability does not protect every activity that exposes more viewers to a broadcast. Furthermore, TV News Clips only increases access in a limited way by selling to a small group of customers, some of whom would buy a tape from WXIA anyway. Because the public already has access to this material and TV News Clips does not offer any access that WXIA could not provide, TV News Clips' activities fall well beyond whatever protections might be available to further this public access interest. The First Amendment does not conflict with WXIA's effort to enforce its copyright in this case.

 Finally, TV News Clips argues that every copyright must further the ends of the Copyright Clause of the Constitution. WXIA's copyright, TV News Clips says, does not further those ends and should not be enforced, because WXIA systematically destroys its broadcast videotapes and deprives the public of the benefits of its creative efforts.[13] We agree that the Constitution allows Congress to create copyright laws only if they benefit society as a whole rather than authors alone. That is what the Congress has done.[14] But

---

**13.** This alleged conflict between the ends of copyright law and its application in a particular case should be analyzed under the fair use rubric. We will, however, defer to TV News Clips' desire to treat this as a separate defense just as we did with regard to its First Amendment arguments, for our conclusion would be the same under either approach.

**14.** It has created a structure that encourages creativity and public enjoyment of that creativity by giving authors the exclusive rights to profit from their works in certain ways. Since authors most often profit by distributing their works to the public, society usually benefits. *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.,* 600 F.2d 1184 (5th Cir.1979).

this does not mean that every copyright holder must offer benefits to society, for the copyright is an incentive rather than a command. And, *a fortiori*, a copyright holder need not provide the most complete public access possible. WXIA provides complete access for seven days and permanent access to everything except the visual images broadcast live from within the studio. The public benefits from this creative work; therefore, enforcing the copyright statute in this case does not violate the Copyright Clause.

IV. Remedy

▇ ▇ WXIA has proven that TV News Clips infringed its copyright. The district court found that TV News Clips had regularly copied the newscast and sold the tapes, and would continue to do so.[15] Unless it can obtain an injunction, WXIA can only enforce its copyrights against TV News Clips by finding out which stories have been copied and sold, registering those stories, and bringing many different infringement actions against TV News Clips. Each infringement action would yield a rather small damage recovery.[16] This is a classic case, then, of a past infringement and a substantial likelihood of future infringements which would normally entitle the copyright holder to a permanent injunction against the infringer pursuant to 17 U.S.C.A. § 502(a) (1977). *See Milene Music, Inc. v. Gotauco*, 551 F.Supp. 1288

(D.R.I.1982); 3 *Nimmer on Copyright* § 13.05[B] (1983). The question is whether the district court abused its discretion in refusing to issue the injunction.[17] Because none of the three grounds relied upon by the court for denying injunctive relief are legally sufficient to support the decision, we hold that the court did abuse its discretion.

▇ The court began its discussion by noting that an injunction would not greatly further the ends of the copyright laws, because the post-broadcast market is relatively unimportant to WXIA as a creative incentive. We agree but find that fact standing alone to be irrelevant. The disincentive to creativity caused by the infringement would be just as small if WXIA were to wait and bring infringement actions in the future. The weakness of WXIA's interest in stopping this infringement has no bearing on the choice between present injunctive relief and future damage relief unless some independent consideration weighs against the use of an injunction in this case.

▇ The "modest" furtherance of First Amendment rights accomplished by TV News Clips, the second ground relied upon by the court, does not provide any such independent reason to disfavor an injunction. It is undoubtedly true that TV News Clips (like any copyright infringer) increas-

Where the First Amendment removes obstacles to the free flow of ideas, copyright law adds positive incentives to encourage the flow.

**15.** Indeed, the court considered future sales by TV News Clips to be a virtual certainty and a "modest social benefit." 572 F.Supp. at 1196.

**16.** The award in this case was $35.

**17.** TV News Clips insists that WXIA is not legally entitled to an injunction, because it seeks an injunction against the infringement of works that have not been created (future newscasts) rather than an injunction applicable only to the March 11 program. The statute itself does not impose such a requirement, for it empowers district courts to issue injunctions "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C.A. § 502(a) (1977). The appellant bases its argument on the requirement that an author

register a work before instituting an infringement action. 17 U.S.C.A. § 411 (1977). An injunction against the use of unregistered works would bypass this requirement.

The district court in this case had the power to issue such an injunction because the statute provides for injunctions to prevent infringement of "*a* copyright" (emphasis added), not necessarily the registered copyright that gave rise to the infringement action. The opposite result would be especially unjust in a case such as this one in which the registered work and the future works are so closely related, part of a series of original works created with predictable regularity and similar format and function. To refuse injunctive relief under these conditions would render meaningless the fact that registration is "not a condition of copyright protection." 17 U.S.C.A. § 408(a) (1977).

es public access to the copyrighted work. But the First Amendment issue of public access was duly considered when resolving the liability issue. If the First Amendment would not prevent WXIA from recovering for individual infringements in the future, it should not bar an injunction in the present. The scope of liability affects First Amendment interests, but the choice of the form of relief in this case does not.

■ Finally, the district court found injunctive relief inappropriate because WXIA regularly abandons the copyright on a portion of its program when it erases the videotape of the entire broadcast. Certainly the erasure shows that WXIA did not desire to distribute post-broadcast copies of parts of the program. Failure to distribute a work does not mean, however, that an owner intends to allow others to use the work, and it is questionable whether WXIA had such an intent. Destroying the only known copy of a work would seem to be the best way to assure that it will not be used by another. Still, we do not say that destruction of the only copy of a work can never establish intent to abandon. We defer to the trial court's factual finding that WXIA intended to abandon portions of its program.

Nevertheless, WXIA erased only a small portion of its broadcast. The entire audiotape still survives, along with many portions of the videotape. The district court, while recognizing this fact, declined to issue an injunction against the use of segments of the news program not erased by WXIA. It said that "the precise wording of an appropriately limited decree is unapparent." The fact that a court must make some difficult judgments should not prevent it from effectuating established legal rights. Moreover, the clear-cut test used by the district court to find an intent to abandon the copyright (destruction of the only copy) should make the formulation of the decree more manageable.

Thus, the trial court relied on irrelevant and insufficient grounds in its refusal to grant injunctive relief. It correctly found that TV News Clips had infringed the copy-

right of WXIA but abused its discretion by refusing to grant injunctive relief. Accordingly, the judgment is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings consistent with this opinion.