PLAYBOY ENTERPRISES,
INC., Plaintiff,

v.

George FRENA, d/b/a Techs Warehouse
BBS Systems and Consulting, and
Mark Dyess, Defendants.

No. 93–489–Civ–J–20.

United States District Court,
M.D. Florida,
Jacksonville Division.

Dec. 9, 1993.

George E. Schulz, Jr., Chad S. Roberts, Jacksonville, FL, David P. Peterson, John D. Vadenberg, Garth A. Winn Portland, OR, for plaintiff.

David M. Wiesenfeld, Carl D. Dawson, Jacksonville, FL, for defendants.

## *ORDER*

SCHLESINGER, District Judge.

This cause is before the Court on Plaintiff's First Motion for Partial Summary Judgment (Copyright Infringement) as to Defendant Frena (Doc. No. S–1, filed July 26, 1993), and Plaintiff's Second and Third Motions for Partial Summary Judgment (Trademark Infringement and Lanham Act Violations) as to Defendant Frena (Doc. No. S–3, filed July 29, 1993). In its First Motion for Partial Summary Judgment, Plaintiff requests that the Court grant partial summary judgment that Defendant Frena infringed Plaintiff's copyrights and specifically that the 170 image files in question in Exhibit C to the Tesnakis Affidavit infringed Plaintiff's copyrights in 50 of Plaintiff's copyrighted magazines. In the Second and Third Motions for Partial Summary Judgment, Plaintiff requests that the Court grant partial summary judgment that Defendant Frena infringed Plaintiff's federally registered trademarks PLAYBOY® and PLAYMATE®; specifically that Defendant Frena infringed United States Trademark registration numbers 600,018 and 721,987 and that Defendant Frena competed unfairly with Plaintiff, violating 15 U.S.C. § 1125(a). Furthermore, Plaintiff asks for oral argument on its Motions. Defendant Frena has filed responses to these Motions. (Doc. Nos. S–5 and S–6, filed August 4, 1993).

Defendant George Frena operates a subscription computer bulletin board service, Techs Warehouse BBS ("BBS"), that distributed unauthorized copies of Plaintiff Playboy Enterprises, Inc.'s ("PEI") copyrighted photographs. BBS is accessible via telephone modem to customers. For a fee, or to those who purchase certain products from Defendant Frena, anyone with an appropriately equipped computer can log onto BBS. Once logged on subscribers may browse through different BBS directories to look at the pictures and customers may also download [1] the high quality computerized copies of the photographs and then store the copied image from Frena's computer onto their home computer. Many of the images found on BBS include adult subject matter. One hundred and seventy of the images that were available on BBS were copies of photographs taken from PEI's copyrighted materials.

Defendant Frena admits that these materials were displayed on his BBS, *see* Answer at ¶ 23; Defendant's Admissions, Response No. 8, that he never obtained authorization or consent from PEI, *see* Answer at ¶¶ 38, 39 and 40, and that each of the accused computer graphic files on BBS is substantially similar to copyrighted PEI photographs, *see* Defendant's Admissions, Response No. 5. Defendant Frena also admits that each of the files in question has been downloaded [2] by one of his customers. *See* Defendant's Admissions, Response No. 11.

Subscribers can upload [3] material onto the bulletin board so that any other subscriber, by accessing their computer, can see that material. Defendant Frena states in his Affidavit filed August 4, 1993, that he never uploaded any of PEI's photographs onto BBS and that subscribers to BBS uploaded the photographs. *See* Affidavit of George Frena at ¶ 6 (Doc. No. S–7). Defendant Frena states that as soon as he was served with a summons and made aware of this matter, he removed the photographs from BBS and has since that time monitored BBS to prevent additional photographs of PEI from being uploaded. *See* Affidavit of George Frena at ¶ 6.

Summary judgment is appropriate "if the pleadings, depositions, answers to in-

---

1. The process of transferring the image from the bulletin board to one's personal computer is known as downloading.

2. *See* note 1.

3. The process of transferring the image from one's personal computer to the bulletin board is known as uploading.

terrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir. 1991). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the nonmoving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *Id.* · When a moving party has discharged its burden, the nonmoving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

■ In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the nonmovant, *Key West Harbor v. City of Key West,* 987 F.2d 723, 726 (11th Cir.1993), and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman,* 873 F.2d 256, 257 (11th Cir.1989). The nonmovant need not be given the benefit of every inference, but only of every "reasonable" inference. *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's infer-

ences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir.1988). It must be emphasized that the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported summary judgement motion. Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12.

## I. COPYRIGHT INFRINGEMENT

■ The Copyright Act of 1976 gives copyright owners control over most, if not all, activities of conceivable commercial value. The statute provides that

the owner of a copyright ... has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies ...; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies ... of the copyrighted work to the public ... and (5) in the case of ... pictorial ... works ... to display the copyrighted work publicly.

17 U.S.C. § 106. Engaging in or authorizing any of these categories without the copyright owner's permission violates the exclusive

rights of the copyright owner and constitutes infringement of the copyright. *See* 17 U.S.C. § 501(a).

To establish copyright infringement, PEI must show ownership of the copyright and "copying" by Defendant Frena, *see Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Southern Bell Tel. & Tel. v. Assoc. Telephone Directory Publishers,* 756 F.2d 801, 810 (11th Cir.1985).

██ There is no dispute that PEI owns the copyrights on the photographs in question. PEI owns copyright registrations for each of the 50 issues of Playboy publications that contain the photographs on BBS. *See* Tesnakis Affidavit at ¶ 9. The copyright registration certificate constitutes prima facie evidence in favor of Plaintiff. *See Southern Bell Tel.,* 756 F.2d at 811. Once the plaintiff has established his prima facie ownership, the burden then shifts to the defendant to counter this evidence. *See* 3 MELVILLE B. NIMMER, Nimmer on Copyright § 13.01[A], at 13–7 (1993). Defendant Frena, however, failed to rebut the appropriate inference of validity.

Next, PEI must demonstrate copying by Defendant Frena. Since direct evidence of copying is rarely available in a copyright infringement action, copying may be inferentially proven by showing that Defendant Frena had access to the allegedly infringed work, that the allegedly infringing work is substantially similar to the copyrighted work, *see Howard v. Sterchi,* 974 F.2d 1272 (11th Cir.1992), and that one of the rights statutorily guaranteed to copyright owners is implicated by Frena's actions. *See Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 277, 291 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 373, 116 L.Ed.2d 324.

Access to the copyrighted work is not at issue. Access is essentially undeniable because every month PEI sells over 3.4 million copies of Playboy magazine throughout the United States. *See* Kent Affidavit at ¶ 4.

Substantial similarity is also a non-issue in this case. Defendant Frena has admitted that every one of the accused images is substantially similar to the PEI copyrighted photograph from which the accused image was produced. *See* Defendant's Admissions at ¶ 5. Moreover, not only are the accused works substantially similar to the copyrighted work, but the infringing photographs are essentially exact copies. *See* Exhibits A and B in the Tesnakis Affidavit. In many cases, the only difference is that PEI's written text appearing on the same page of the photograph has been removed from the infringing copy.

The next step is to determine whether Defendant Frena violated one of the rights statutorily guaranteed to copyright owners under 17 U.S.C. § 106. *See* 17 U.S.C. § 501(a).

██ Public distribution of a copyrighted work is a right reserved to the copyright owner, and usurpation of that right constitutes infringement. *See Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 843 (11th Cir.1990). PEI's right under 17 U.S.C. § 106(3) to distribute copies to the public has been implicated by Defendant Frena. Section 106(3) grants the copyright owner "the exclusive right to sell, give away, rent or lend any material embodiment of his work." 2 MELVILLE B. NIMMER, Nimmer on Copyright § 8.11[A], at 8–124.1 (1993). There is no dispute that Defendant Frena supplied a product containing unauthorized copies of a copyrighted work. It does not matter that Defendant Frena claims he did not make the copies itself. *See* JAY DRATLER, JR., Intellectual Property Law: Commercial, Creative and Industrial Property § 6.01[3], at 6–15 (1991).

██ Furthermore, the "display" rights of PEI have been infringed upon by Defendant Frena. *See* 17 U.S.C. § 106(5). The concept of display is broad. *See* 17 U.S.C. § 101. It covers "the projection of an image on a screen or other surface by any method, the transmission of an image by electronic or other means, and the showing of an image on a cathode ray tube, or similar viewing apparatus connected with any sort of information storage and retrieval system." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 64 (Sept. 3, 1976), reprinted in 1976 U.S.Code Cong. & Ad-

min.News 5659, 5677. The display right precludes unauthorized transmission of the display from one place to another, for example, by a computer system. *See* H.R.Rep. No. 1476, 94th Cong., 2d Sess. 80.(Sept. 3, 1976), reprinted in 1976 U.S.Code Cong. & Admin.News 5659, 5694; JAY DRATLER, JR., Intellectual Property Law: Commercial, Creative and Industrial Property § 6.01[4], at 6–24 (1991).

"Display" covers any showing of a "copy" of the work, "either directly or by means of a film, slide, television image or any other device or process." 17 U.S.C. § 101. However, in order for there to be copyright infringement, the display must be public. A "public display" is a display "at a place open to the public or ... where a substantial number of persons outside of a normal circle of family and its social acquaintances is gathered." 2 MELVILLE B. NIMMER, Nimmer on Copyright § 8.14[C], at 8–169 (1993). A place is "open to the public" in this sense even if access is limited to paying customers. 2 MELVILLE B. NIMMER, Nimmer on Copyright § 8.14[C], at 8–169 n. 36 (1993); *see Columbia Pictures Indus., Inc. v. Redd Horne Inc.*, 749 F.2d 154 (3d Cir.1984).

■ Defendant's display of PEI's copyrighted photographs to subscribers was a public display. Though limited to subscribers, the audience consisted of "a substantial number of persons outside of a normal circle of family and its social acquaintances." 2 MELVILLE B. NIMMER, Nimmer on Copyright § 8.14[C], at 8–169 (1993). *See also Thomas v. Pansy Ellen Products*, 672 F.Supp. 237, 240 (W.D.North Carolina 1987) (display at a trade show was public even though limited to members); *Ackee Music, Inc. v. Williams*, 650 F.Supp. 653 (D.Kan.1986) (performance of copyrighted songs at defendant's private club constituted a public performance).

Defendant Frena argues that the affirmative defense of fair use precludes a finding of copyright infringement. "Fair use" describes "limited and useful forms of copying and distribution that are tolerated as exceptions to copyright protection." *Cable/Home Communications Corp.*, 902 F.2d at 843 (citing *Pacific & Southern Co. v. Duncan*, 744 F.2d 1490, 1494 (11th Cir.1984), *cert. denied,* 471 U.S. 1004, 105 S.Ct. 1867, 85 L.Ed.2d 161 (1985)).

■ The question of fair use constitutes a mixed issue of law and fact. *See Harper & Row, Publishers, Inc. v. Nation Enterprises.*, 471 U.S. 539, 560, 105 S.Ct. 2218, 2230, 85 L.Ed.2d 588 (1985). Fair use may be addressed on summary judgment. *See Cable/Home Communications Corp.*, 902 F.2d at 843–45 (affirming summary judgment holding that fair use doctrine did not apply).

■ The Copyright Act mandates four nonexclusive factors which courts shall consider case by case in determining fair use. *Cable/Home Communications Corp.*, 902 F.2d at 843; *see* 17 U.S.C. § 107. Section 107 does not attempt to define "fair use." It merely lists the factors to be considered in determining whether a use made of a work in a particular case is fair. Section 107 states:

[T]he fair use of a copyrighted work ... for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

With respect to the first factor, "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright ...," *Harper & Row, Publishers, Inc.*, 471 U.S. at 562, 105 S.Ct. at 2231 (quoting *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 451, 104 S.Ct. 774, 793, 78 L.Ed.2d 574 (1984)), so that "any

**1558**

commercial use tends to cut against a fair use defense." *Triangle Publications, Inc. v. Knight–Ridder Newspapers, Inc.*, 626 F.2d 1171, 1175 (5th Cir.1980).

■ Defendant Frena's use was clearly commercial. BBS was provided to those paying twenty-five dollars ($25) per month or to those who purchased products from Defendant Frena. One who distributes copyrighted material for profit is engaged in a commercial use even if the customers supplied with such material themselves use it for personal use. *See Pacific & Southern Co. v. Duncan*, 572 F.Supp. 1186 (N.D.Ga.1983), *affirmed*, 744 F.2d 1490 (11th Cir.1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1867, 85 L.Ed.2d 161 (1985).

Implicit in the presumption that every commercial use is presumptively unfair is "some meaningful likelihood that future market harm exists." *Cable/Home Communications Corp.*, 902 F.2d at 844 (citing *Sony*, 464 U.S. at 451, 104 S.Ct. at 793). It is clear that future market harm exists to PEI due to Frena's activities, as will be discussed in more detail under factor four.

■ The second factor is the "nature of the copyrighted work." 17 U.S.C. § 107. "Copyright protection is narrower, and the corresponding application of fair use defense greater, in the case of factual works than in the case of works of fiction or fantasy." 3 MELVILLE B. NIMMER, Nimmer on Copyright § 13.05[A], at 13–102.57 (1993). If a work is more appropriately characterized as entertainment, it is less likely that a claim of fair use will be accepted. *See In New Era Publications Intern., ApS v. Carol Publishing Group*, 904 F.2d 152 (2d Cir.), *cert. denied*, 498 U.S. 921, 111 S.Ct. 297, 112 L.Ed.2d 251 (1990). The copyrighted works involved in this case are in the category of fantasy and entertainment. Therefore, the second factor works against Frena's fair use defense.

Regarding the third factor, the amount and substantiality of the portion of the copyrighted work used, the Supreme Court has directed a qualitative evaluation of the copying of the copyrighted work. *Cable/Home Communications Corp.*, 902 F.2d at 844 (citing *Harper & Row*, 471 U.S. at 564–65, 105

S.Ct. at 2232–33). That is, "a small degree of taking is sufficient to transgress fair use if the copying is the essential part of the copyrighted work." *Id. See, e.g., Meeropol v. Nizer*, 560 F.2d 1061, 1071 (2d Cir.1977) (although copyrighted letters were less than 1% of the infringing work, they were displayed prominently), *cert. denied*, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978); *Roy Export Co. Establishment of Vaduz, Liechtenstein, Black, Inc. v. Columbia Broadcasting Sys., Inc.*, 503 F.Supp. 1137, 1145 (S.D.N.Y. 1980) (fifty-five seconds taken from a one-hour and twenty-nine-minute film deemed qualitatively substantial for copyright infringement), *aff'd*, 672 F.2d 1095 (2d Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *Sheldon v. Metro–Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.) ("[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate."), *cert. denied*, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936).

There is no doubt that the photographs in Playboy magazine are an essential part of the copyrighted work. The Court is not implying that people do not read the articles in PEI's magazine. However, a major factor to PEI's success is the photographs in its magazine. By pirating the photographs for which PEI has become famous, Defendant Frena has taken a very important part of PEI's copyrighted publications.

The fourth factor, the "effect of the use upon the potential market for or value of the copyrighted work," 17 U.S.C. § 107(4), is "undoubtedly the single most important element of fair use, since a proper application of fair use does not impair materially the marketability of the copied work." *Cable/Home Communications Corp.*, 902 F.2d at 845. This factor poses the issue of "whether unrestricted and widespread conduct of the sort engaged in by the defendant (whether in fact engaged in by the defendant or others) would result in a substantially adverse impact on the potential market for or value of the plaintiff's present work." 3 MELVILLE B. NIMMER, Nimmer on Copyright § 13.05[A], at 13.102.-61–62 (1993). "[P]otential market means either an immediate or delayed market, and includes harm to derivative works." *Ca-*

*ble/Home Communications Corp.,* 902 F.2d at 845.

Obviously, if this type of conduct became widespread, it would adversely affect the potential market for the copyrighted work. Such conduct would deny PEI considerable revenue to which it is entitled for the service it provides.

■■■ There is irrefutable evidence of direct copyright infringement in this case. It does not matter that Defendant Frena may have been unaware of the copyright infringement. Intent to infringe is not needed to find copyright infringement. Intent or knowledge is not an element of infringement, and thus even an innocent infringer is liable for infringement; rather, innocence is significant to a trial court when it fixes statutory damages, which is a remedy equitable in nature. *See D.C. Comics Inc. v. Mini Gift Shop,* 912 F.2d 29 (2d Cir.1990).

■■■ Frena argues that his commercial use was so insignificant as to justify holding for him under the principle of *de minimis non curat lex.* The Court disagrees. The detrimental market effects coupled with the commercial-use presumption negates the fair use defense. Defendant Frena infringed Plaintiff's copyrights; specifically, the 170 image files in question in Exhibit C to the Tesnakis Affidavit infringed Plaintiff's copyrights in 50 of Plaintiff's copyrighted magazines. The Court finds that the undisputed facts mandate partial summary judgment that Defendant Frena's unauthorized display and distribution of PEI's copyrighted material is copyright infringement under 17 U.S.C. § 501.

## II. TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

■■■ In addition to the use of PEI's copyrighted photographs on BBS, PEI's registered trademarks, PLAYBOY® and PLAYMATE®, were used to identify many of the files containing the photographs. Furthermore, PEI's text was removed from the photographs and Defendant Frena's name, Techs Warehouse BBS, and telephone number were placed on PEI's copyrighted photographs. This is uncontested. Therefore, Plaintiff has moved for partial summary judgment on the issues of trademark infringement under 15 U.S.C. § 1114 and unfair competition under 15 U.S.C. § 1125(a).

Defendant Frena admits that the registered trademarks PLAYBOY® and PLAYMATE® were used in file descriptors for 170 of the images found on BBS and that such file descriptors were displayed to his customers. *See* Answer at ¶¶ 51 and 52. Defendant Frena contends that when a subscriber uploads the material onto BBS, the same subscriber provides a description of the uploaded material for the BBS index. Defendant Frena contends that he himself has never placed the words "Playboy" or "Playmate" onto BBS. Defendant Frena further alleges that he, innocently and without malice, allowed subscribers to upload whatever they wanted onto BBS.

The first issue the Court must address is whether the marks PLAYBOY® and PLAYMATE® are distinctive enough to deserve protection under the Trademark Act of 1946 (commonly known as the Lanham Act), 15 U.S.C. § 1051 *et seq.,* specifically § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). *See Freedom Sav. and Loan Ass'n v. Way,* 757 F.2d 1176 n. 1 (11th Cir.), *cert. denied,* 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985); *Ice Cold Auto Air v. Cold Air & Accessories,* 828 F.Supp. 925, 930 (M.D.Fla. 1993).

There are four categories of distinctiveness in which a mark may be classified. "In ascending order they are: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful." *Investacorp, Inc. v. Arabian Investment Banking Corp.,* 931 F.2d 1519, 1522–23 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 639, 116 L.Ed.2d 657 (1991). The categorization of a term as generic, descriptive, suggestive or arbitrary typically resolves the issue of whether a mark is protectable, with generic marks getting the least protection and arbitrary or fanciful marks receiving the highest degree of protection.

PLAYBOY® and PLAYMATE® are suggestive marks since they implicitly refer to their products qualities. *See PEI v. P.K.*

*Sorren Export Co. Inc. of Florida,* 546 F.Supp. 987, 995 (S.D.Fl.1982). They are well known marks and widely associated with PEI's products. These marks have acquired great distinctiveness among consumers, and are therefore entitled to a high degree of protection. *See Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.,* 486 F.Supp. 414, 419 (S.D.N.Y.1980).

Once the threshold question of whether the mark is distinctive enough to deserve protection is answered affirmatively, the Court must turn to the central inquiry of whether there is a "likelihood of confusion." *See Freedom Sav. and Loan Ass'n,* 757 F.2d at 1179; *Ice Cold Auto Air,* 828 F.Supp. at 934.

The following factors are highly relevant in deciding whether there is a likelihood of confusion: "(1) the type of mark at issue; (2) similarity of marks; (3) similarity of product or services; (4) identity of purchasers and similarity of retail outlets; .... (6) the defendant's intent; and (7) actual confusion." *Ice Cold Auto Air,* 828 F.Supp. at 935 (citing *Freedom Sav. and Loan Ass'n,* 757 F.2d at 1182–83). The Court, however, is not required to specifically mention each of these factors in making its decision. *See Univ. of Georgia Athletic Ass'n v. Laite,* 756 F.2d 1535, 1542 (11th Cir.1985) (analyzing the factors in the context of a claim of unfair competition).

Rather than simply determining whether a majority of these factors indicate a likelihood of confusion, a court must "evaluate the weight to be accorded the individual factors and then make its ultimate decision." *Am-Brit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1538 (11th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987). An analysis of fewer than all seven factors may support a finding of likelihood of confusion. *See Univ. of Georgia Athletic Ass'n,* 756 F.2d at 1543. In the Eleventh Circuit, the type of mark and evidence of actual confusion are the most important factors. *Dieter v. B & H Industries of Southwest Florida, Inc.,* 880 F.2d 322, 326 (11th Cir.1989), *cert. denied,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990).

In analyzing the type of mark, the Court must determine whether the mark is strong or weak in order to determine the level of protection to be extended to the mark. *See Ice Cold Auto Air,* 828 F.Supp. at 935.

The more distinctive a plaintiff's servicemark, the greater the likelihood that consumers will associate the registered trademark and all similar marks with the registered owner. The law therefore provides the greatest protection to strong and distinctive servicemarks; the strength of a mark depends on the extent of third party usage and the relationship between the name and the service or good it describes. *Freedom Sav. and Loan Assoc.,* 757 F.2d at 1182.

In analyzing the relationship between the name and the service or good it describes, the Court again considers the proper categorization of the mark. At this stage of the analysis, the goal is to determine the degree of distinctiveness of the mark. *See Ambrit, Inc.,* 812 F.2d at 1539 n. 36. Suggestive and arbitrary marks are considered to be the most distinctive marks, and, as relatively strong marks, entitled to the strongest protection. *See Ice Cold Auto Air,* 828 F.Supp. at 935. The Court previously categorized the marks involved as suggestive marks which are, therefore, entitled to the strongest protection.

There is no issue as to the similarity of the marks in the instant case. Not only are the marks similar, they are exactly the same.

The greater the similarity between products and services, the greater the likelihood of confusion. *See Exxon Corp. v. Texas Motor Exchange of Houston, Inc.,* 628 F.2d 500, 505 (5th Cir.1980). Defendant Frena's product consisted of computer images of nude women. Of course, this is the core of PEI's business. Even though Defendant Frena's photographs were available in a different medium than Plaintiff's, the services both parties provided were virtually identical.

 A finding that Defendant adopted a mark with the intent of deriving benefit from the reputation of Plaintiff's service or product may alone be enough to justify an inference that there is confusing similarity. *See Ambrit, Inc.,* 812 F.2d at 1542. Defendant

contends that he did not intend to use Plaintiff's mark. However, a showing of intent or bad faith is unnecessary to establish a violation of § 1141(a). *See Chanel, Inc. v. Italian Activewear of Florida, Inc.,* 931 F.2d 1472, 1476 (11th Cir.1991). Intent is just one of the factors to consider in evaluating whether the infringing use is likely to cause confusion. *See Chanel, Inc.,* 931 F.2d at 1472, 1476 n. 4 (citing *Original Appalachian Artworks, Inc. v. The Toy Loft,* 684 F.2d 821, 831–32 (11th Cir.1982)).

 Even though a guilty state of mind is relevant evidence of trademark infringement, an innocent state of mind is irrelevant on the issue of likelihood of confusion since the lack of intent to deceive does nothing to alleviate the confusion precipitated by similarity of trademarks. *See* 3A RUDOLF CALLMAN, *The Law of Unfair Competition, Trademarks and Monopolies* § 20.49, at 385 (4th ed. 1993).

 "Although evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion." *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 978 (11th Cir.1983) (quoting *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 263 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980)). Actual confusion by a few customers is evidence of likelihood of confusion by many customers. *See Freedom Sav. and Loan Ass'n,* 757 F.2d at 1185. Therefore, a plaintiff usually will not have to prove more than a few incidents of actual confusion. *See id.*

In its Motion for Summary Judgment, Plaintiff has not shown any evidence of actual confusion among consumers. However, it is not necessary to prove actual confusion on the part of customers. It is just that if evidence of actual confusion is available, it is so highly probative of likelihood of confusion that it can rarely be ignored.

An examination of the factors mentioned above indicates that Defendant Frena's use of PEI's marks is likely to confuse consumers. Defendant Frena is not merely using marks similar to those of Plaintiff, Defendant Frena is using the exact marks registered to Plaintiff.

This case involves a suggestive mark entitled to the strongest protection, Defendant Frena used the identical mark of Plaintiff and the services involved were virtually identical. Each of these elements tends to show a likelihood of confusion. It is likely that customers of Defendant Frena would believe that PEI was the source of Defendant Frena's images and that PEI either sponsored, endorsed or approved Defendant Frena's use of PEI's images.

 It is well established that "falsely suggesting affiliation with the trademark owner in a manner likely to cause confusion as to source of sponsorship constitutes infringement." *Burger King v. Mason,* 710 F.2d 1480, 1492 (11th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984). Further, "the law is established that falsely suggesting the existence of affiliation with a well-known business by usurping the latter's good-will constitutes both trademark infringement and unfair competition." *Showtime/The Movie Channel v. Covered Bridge Condominium Assoc., Inc.,* 693 F.Supp. 1080, 1089 (S.D.Fla.1988) (quoting *Volkswagenwerk Aktiengesellschaft v. Tatum,* 344 F.Supp. 235, 237 (S.D.Fla.1972)).

The Court finds that Defendant Frena infringed Plaintiff's federally registered trademarks PLAYBOY® and PLAYMATE®. More specifically, Defendant Frena infringed United States Trademark registration numbers 600,018 and 721,987.

## III. UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides:

(a)(1) Any person who, or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which—

(A) is likely to cause confusion or to cause mistake, or to deceive as to the

affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damages by such act.

15 U.S.C. § 1125(a). This statutory provision provides a federal cause of action for unfair competition. There are similarities between the analysis required for trademark infringement and for unfair competition. However, the unfair competition claim is broader. *See Ice Cold Auto Air,* 828 F.Supp. at 938 n. 14 (citing *Freedom Sav. and Loan Ass'n v. Way,* 757 F.2d 1176, 1186 (11th Cir.1985)), *cert. denied,* 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985).

15 U.S.C. § 1125(a) is designed to protect against a broader range of deceptive or unfair trade practices than 15 U.S.C. § 1114. In addition, both sections require the same test to determine whether the particular actions complained of are violative of their terms. *See Showtime/The Movie Channel v. Covered Bridge Condo,* 693 F.Supp. 1080, 1090 (S.D.Fla.1988). Thus, as a general rule, the same set of facts which support an action for trademark infringement also support an action for unfair competition. *See Babbit Electronics Inc. v. Dynascan Corp.,* 828 F.Supp. 944, 957 (S.D.Fla.1993); *Marathon Mrg. Co. v. Enerlite Products Corp.,* 767 F.2d 214, 217 (5th Cir.1985). Therefore, it appears that Defendant Frena violated 15 U.S.C. § 1125(a).

■■■ Defendant Frena has violated 15 U.S.C. § 1125(a) by falsely inferring and describing the origin of PEI's photographs. Defendant Frena makes it appear that PEI authorized Defendant Frena's product. Furthermore, the removal of PEI's trademarks from the photographs constitutes "reverse passing off." *See* 3A RUDOLF CALLMAN, *The Law of Unfair Competition, Trademarks*

*and Monopolies* § 21.18, at 170 (4th ed. 1993).

PEI's trademarks were obliterated from the photographs, and then Defendant Frena attempted to take credit for Plaintiff's work by placing its own advertisement with its phone number on some of the photographs. Thus, PEI has been denied the right to public credit for the success and quality of its goods. Reverse passing off is a violation of § 43(a) of the Lanham Act. *See Roho, Inc. v. Marquis,* 902 F.2d 356 (5th Cir.1990); *Debs v. Meliopoulos,* 1991 U.S.Dist. LEXIS 19864 (N.D.Ga.1991).

There is no liability for reverse passing off when a defendant modifies a product to such an extent that the defendant converts it into something different in kind from the original product. Defendant Frena, however, did not convert PEI's product to such an extent that it could be considered different in kind from PEI's product.

In *Roho,* the defendant purchased the plaintiff's wheelchair cushions on the open market, removed plaintiff's labels therefrom, and fastened them together to make bed mattresses. It was held that the two products were commercially distinct, and that therefore defendant was not simply reselling the product of plaintiff. In the instant case, however, Defendant Frena is simply reselling the product of PEI stripped of its original identity.

Defendant Frena's actions of deleting Plaintiff's text from the photographs, adding his own text to some of the photographs and appropriating PEI's photographs without attribution to the copyright owner violated Section 43(a) of the Lanham Act. Defendant Frena competed unfairly with Plaintiff, violating 15 U.S.C. § 1125(a).

Accordingly,

(1) Plaintiff's Request for Oral Argument on its Motion for Partial Summary Judgment (Doc. No. S–1) is **DENIED,**

(2) Plaintiff's Request for Oral Argument on its Second and Third Motions for Partial Summary Judgment (Doc. No. S–3) is **DENIED,**

(3) Plaintiff's First Motion for Partial Summary Judgment (Copyright Infringement) as to Defendant Frena (Doc. No. S–1) is **GRANTED,**

(4) Plaintiff's Second and Third Motions for Partial Summary Judgment (Trademark Infringement and Lanham Act Violations) as to Defendant Frena (Doc. No. S–3) are **GRANTED** and

(4) The remaining issues of the injunction and damages are still remaining for the Court to decide.

**DONE AND ORDERED.**