**SEGA ENTERPRISES LTD. and Sega of America, Inc., Plaintiffs,**

v.

**MAPHIA, a business of unknown structure; Parsac, a business of unknown structure; Psychosis, a business of unknown structure; Chad Scherman aka Chad Sherman aka "Brujjo Digital," and Does 2–6 aka "Operator," "Firehead," "Lion," "Hard Core," "Candyman," all individually and d/b/a Maphia and Parsac; Howard Silberg by his mother and next friend Ilene Silberg, aka "Caffeine," and Does 14–18 aka "Apache," "Maelstrom," "Gazzer," "Paranoid/Chryseis," "Doom" all individually and d/b/a Psychosis and Parsac; Does 7–12; Does 19–25, Defendants.**

No. C 93–4262 CW.

United States District Court,
N.D. California.

March 28, 1994.

Marilyn C. Siegel, Siegel and Siegel, Baltimore, MA, for defendants.

Neil A. Smith, Limbach & Limbach, San Francisco, CA, for plaintiffs.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION, AND CONFIRMATION OF SEIZURE*

WILKEN, District Judge.

This is an action for copyright infringement (under 17 U.S.C. § 101 *et seq.*), federal trademark infringement (under 15 U.S.C. § 1051 *et seq.*), federal unfair competition/false designation of origin (under 15 U.S.C. § 1125(a)), California trade name infringement (under California Business & Professions Code § 14400 *et seq.*), and California unfair competition law (under California Business and Professions Code § 14210, 17200–17203) against Defendant Chad Scherman and several other individuals operating on-line computer bulletin boards, and the MAPHIA and other bulletin boards as businesses of unknown origin. On December 9, 1993, the Court, the Honorable Fern M. Smith presiding, issued an *ex parte* Temporary Restraining Order, Seizure Order, and Order to Show Cause Re Why a Preliminary

Injunction Should Not Issue enjoining Defendants' use of Plaintiffs' SEGA trademark and the direct and/or contributory infringement of Plaintiffs' copyrights.

A hearing was held before Judge Smith on December 17, 1993, on Plaintiffs' motion for a preliminary injunction, pursuant to the order to show cause. At that hearing, Judge Smith continued the temporary restraining order in effect until further order of the Court. Thereafter, Defendant Paolo Rizzi, individually, filed a written stipulation to a preliminary injunction and confirmation of the seizure. Defendants Scherman and MAPHIA filed an opposition.

Following reassignment of this action to the undersigned, a further hearing was held on February 25, 1994. The Court now determines, having considered the pleadings, all papers filed by the parties, and the parties' oral arguments, that a preliminary injunction should issue against Defendants Scherman and MAPHIA as ordered separately. Pursuant to F.R.C.P. 65(d), the Court makes the following Findings of Fact and Conclusions of Law in support of the preliminary injunction and confirmation of the seizure order:

## FINDINGS OF FACT

### I. FINDINGS SUPPORTING PRELIMINARY INJUNCTIVE RELIEF

#### A. *The parties and their activities*

1. Plaintiff Sega Enterprises, Ltd. ("SEL"), is a corporation organized and existing under the laws of Japan. Compl. ¶ 1.

2. Plaintiff Sega of America, Inc. ("SOA"), is a California corporation with a principal place of business in this district in San Mateo, California. SOA is a wholly-owned subsidiary of SEL. SOA and SEL are hereinafter sometimes collectively referred to as "Sega" or "Plaintiffs." Compl. ¶ 2.

3. Defendant MAPHIA is a business of unknown structure doing business and located in San Francisco, California, within this District, engaged in the business of running a computer bulletin board and related activities. Yang Decl. ¶ 12.

4. Defendant Chad Scherman (aka Chad Sherman, aka "Brujjo Digital") is an individual residing in this district in San Francisco, California. Chad Scherman is in possession and/or control of the MAPHIA Bulletin Board, which is run from his residence where the computer and memory comprising the bulletin board are located, and does business as MAPHIA or Maphia Trading Company on such bulletin board. He is also one of the "system operators" of the MAPHIA bulletin board. Keene Decl. ¶¶ 2, 11.

#### B. *The Business of Plaintiffs*

5. Sega is a major manufacturer and distributor of computer video game systems and computer video games which are sold under the SEGA trademark, a registered trademark of Sega Enterprises, Ltd. (Federal Registration No. 1,566,116, issued November 14, 1989) owned by Sega. Yang Decl. ¶ 3, Exh. A.

6. Sega's computer video game programs are the subject of copyright under the laws of the United States. Yang Decl. ¶ 5; Compl. Exh. B.

7. Sega creates and develops its games and ensures the quality and reliability of the video game programs and products sold under SEGA trademarks. Yang Decl. ¶ 4.

8. The Sega game system consists of two major components sold by Sega: the game console and software programs stored on video game cartridges which are inserted into the base unit. Each cartridge contains a single game program. The base unit contains a microcomputer which, when connected to a television, permits individuals to play the video game stored on the inserted cartridge. Yang Decl. ¶ 6.

9. The computer programs for the Sega video games are stored on a cartridge in a Read–Only Memory ("ROM") chip. Sega's video games cannot be copied using the game console. However, as noted below, running devices, called "copiers," are designed to copy the video game programs from a Sega game cartridge onto other magnetic media such as hard and floppy disks. Yang Decl. ¶¶ 6, 21, 23.

### C. *Defendants' Activities on the MAPHIA Bulletin Board*

10. An electronic bulletin board consists of electronic storage media, such as computer memories or hard disks, which is attached to telephone lines via modem devices, and controlled by a computer. Yang Decl. ¶ 12.

11. Third parties, known as "users," of electronic bulletin boards can transfer information over the telephone lines from their own computers to the storage media on the bulletin board by a process known as "uploading." Uploaded information is thereby recorded on the storage media. Third party users can also retrieve information from the electronic bulletin board to their own computer memories by a process known as "downloading." Video game programs, such as Sega's video game programs, are one kind of computer programs or information which can be transferred by means of electronic bulletin boards. Yang Decl. ¶¶ 18–19.

12. Defendants MAPHIA and Chad Scherman operate an electronic bulletin board called MAPHIA (hereinafter "the MAPHIA bulletin board"). The MAPHIA bulletin board is open to the public and, according to Defendant Scherman's Opposition Memorandum, has approximately 400 users. Users of the MAPHIA bulletin board communicate using aliases or pseudonyms. "Brujjo Digital" appears as the alias used by Defendant Chad Scherman as the system operator of the MAPHIA bulletin board, and in communicating with others. Keene Decl. ¶¶ 2, 11; Yang Decl. ¶ 33.

13. Data from the MAPHIA bulletin board indicates that the MAPHIA bulletin board is economically linked to another electronic bulletin board called PSYCHOSIS. This data also indicates that Defendant Scherman and the MAPHIA bulletin board are part of or linked to a network of bulletin boards, called PARSEC, for business purposes. Keene Decl. ¶¶ 12–16, Exh. 5A.

14. The evidence establishes that Sega's copyrighted video games are available on and transferred to and from the MAPHIA bulletin board by users who upload and download games. Once a game is uploaded to the MAPHIA bulletin board it may be downloaded in its entirety by an unlimited number of users: Keene Decl. ¶¶ 7, 9; Yang Decl. ¶¶ 18, 24.

15. It appears that the copies of Sega's video game programs on Defendants' bulletin board are unauthorized copies of Sega's copyrighted video games, having been uploaded there by users of Defendant's bulletin board. Keene Decl. ¶ 9.

16. It has been shown by evidence in the form of printouts from the data on Defendant's bulletin board which was seized pursuant to this Court's Order and on-line data captured from Defendant's bulletin board, that the uploading and downloading of unauthorized copies of Sega's copyrighted video games is particularly known to Defendant Scherman and the MAPHIA bulletin board. This evidence also indicates that Defendant specifically solicited this copying and expressed the desire that these video game programs be placed on the MAPHIA bulletin board for downloading purposes. Keene Decl. ¶¶ 7–16.

17. Notwithstanding contrary assertions of Defendant Scherman, there is evidence that MAPHIA directly or through an affiliate sometimes charges a direct fee for downloading privileges, or barters for the privilege of downloading Sega's games. Information on the MAPHIA bulletin board includes the following passage:

> Thank you for purchasing a Console Back Up Unit [copier] from PARSEC TRADING. As a free bonus for ordering from Dark Age, you receive a COMPLEMENTARY Free Download Ratio on our Customer Support BBS. This is if you cannot get a hold of SuperNintendo or Sega Genesis games. You can download up to 10 megabytes, which is equal to approximately 20 normal-sized SuperNintendo or Genesis games.
>
> After your 10 megabytes is used, you can purchase full months of credit for only $35/month. You can also prepay and order either 1 year of free downloads for $200/year, or a lifetime of free downloads for only $500.

Keene Decl. Exh. 5B at 2.

18. Defendant thus provides downloading privileges for Sega games to users in ex-

change for the uploading of Sega games or other programs or information or in exchange for payment for other goods, such as copiers, or services, such as the provision of credit card numbers to users. *See* Keene Decl. ¶¶ 7–21.

19. By utilizing the MAPHIA bulletin board, users are able to make and distribute one or more copies of Sega video game programs from a single copy of a Sega video game program, and thereby obtain unauthorized copies of Sega's copyrighted video game programs. Yang Decl. ¶ 24.

20. This unauthorized copying of Sega video game programs works to decrease Sega's sales of video game cartridges. This unauthorized copying and distribution further deprives Sega of control over the quality of video games bearing its SEGA and other trademarks. The effect on Sega's reputation and market for video game cartridges may be substantial and immeasurable. *See* Yang Decl. ¶¶ 4–6, 17, 30–32.

21. Defendant has challenged the preliminary injunction on the basis that he has not profited from the distribution of Sega's programs. However, it appears Defendant profits from the operation of the MAPHIA bulletin board through direct payment and/or barter. There are also several ways Defendant indirectly profits. First, the existence of this distribution network for Sega video game programs increases the prestige of the MAPHIA bulletin board, and Defendant's distribution of Sega games naturally leads to an increased market for the video game copiers and other goods or services sold by Defendant. Keene Decl. ¶ 9.

22. Defendant further profits from the distribution of Sega programs on the MAPHIA bulletin board because the bulletin board gives rise to a need for telephone communications which naturally leads to an increased market for telephone calling card numbers sold by the Defendant Scherman. Keene Decl. ¶¶ 10–21.

23. The copies of Sega's programs uploaded to and downloaded from the MAPHIA Bulletin board are substantially similar to Sega's video game programs as stored in the cartridges sold by Sega. Yang Decl. ¶ 17.

24. Plaintiffs' SEGA trademark appears on the screen whenever a Sega game which has been downloaded from the MAPHIA bulletin board is subsequently played, and Sega's trademark is used on the file descriptors by the MAPHIA bulletin board with the knowledge and consent of Defendant Scherman. Yang Decl. ¶¶ 18–19, 29.

25. The copies of Sega's video game programs downloaded by users from the MAPHIA bulletin board, according to instructions and facilitated by Defendant Scherman, are further unauthorized copies of Sega's copyrighted video games, which, in addition bear unauthorized use of Sega's registered trademarks.

26. The Sega game programs maintained and distributed through the MAPHIA bulletin board include "pre-release" versions of games which are not available to the public. Yang Decl. ¶ 30.

27. The directory of video game programs available on MAPHIA also contain numerous references to video game programs containing "patches," "fixes," and problems which may have been introduced in the copying process. Yang Decl. ¶ 31.

28. Bulletin board users and/or parties who may receive copies of Sega games from bulletin board users are likely to confuse the unauthorized copies downloaded and transferred from the MAPHIA bulletin board with genuine Sega video game programs.

29. Because Sega is unable to control the quality of the games distributed under its trademarks on the MAPHIA bulletin board as the MAPHIA has altered or may have the opportunity to alter such game programs, and the copies distributed by the MAPHIA bulletin board do not contain the packaging and instruction used by Sega, the Defendants' operation of the MAPHIA bulletin board is likely to damage Sega's reputation and the substantial goodwill which Sega has built up in its trademarks.

D. *Infringing Sales and Distribution of "Copiers"*

30. There is substantial evidence that Defendant Scherman and the MAPHIA bulletin board are engaged in advertising, distribu-

tion and selling video game copiers, such as the so-called "Super Magic Drive" and/or "Multi Game Hunter." *See generally,* Keene Decl.

31. Defendant's business plan as described by Defendant Scherman's alias "Brujjo Digital," states:

As you know we have PARSEC TRADING CO. as our business that sells everything from Copiers to Modems to Hard Drives to Calling Cards (off the record, hehe), and even Pentium Chips now. So, the next step is a MEDIA BLITZ! Time to post advertisements ASCIIS on every bbs you log onto! I'll have some Advertisements ready

. . .

Also, we are selling Super Wild Cards, Pro Fighter Q's and Super Magic Drives for AKIRA and that part of PARSEC will be dedicated for him but me and CAFFEINE will handle all the business side of that and paying him the money and dealing with the customers, etc.

Keene Decl. ¶ 15, Exh. 5A at 3.

32. These copiers by Defendant's own admission are used for the making of unauthorized copies of Sega's video game programs and some purchasers thereof use them so as to avoid purchasing Sega's game cartridges from Sega. *See generally,* Def.'s Mem. in Opp. to Prelim. Injunction. Users or others who receive copies of the Sega video games on disk do not need to purchase any genuine Sega games, but can play the games directly from the disks using the copiers.

33. The copiers sold and advertised by Defendant come with downloading privileges to the purchaser, giving the purchaser free Sega video game copyrighted programs, so as to be able to duplicate, distribute and play the games without purchase of Sega game cartridges. Keene Decl.Exh. 5B.

34. The copiers thus supplant the need to purchase the genuine Sega video games.

35. Defendant states without support that the copiers are also capable of being used for other purposes, such as game development or making back-up copies, but such incidental capabilities have not been shown to be the primary use of such copiers.

36. There is no need to make archival copies of ROM game cartridges. This is because the ROM cartridge format is not susceptible to breakdown and because defective cartridges are replaced by Sega. Yang Decl. 25–28.

37. The copiers are advertised and sold by Defendant's MAPHIA bulletin board for $350. Keene Decl.Exh. 3. The video game programs advertised by Sega sell for between $30 and $70. Compl. ¶ 15. It is unlikely that customers would purchase a copier to back-up games, which are on reliable cartridges, for this price.

38. The only substantial use of video game copiers is to avoid having to buy video game cartridges from Sega by copying the video game program.

## II.  FINDINGS SUPPORTING COLLECTION AND SEIZURE OF EVIDENCE

39. Sega undertook to collect evidence of the above activities by having a Sega employee gain access the MAPHIA bulletin board under a pseudonym, as individuals generally do on the bulletin board, using information supplied by an authorized user who was an informant. Yang Decl. ¶¶ 11–13.

40. Pursuant to the *ex parte* Temporary Restraining Order and Seizure Order issued by Judge Smith on December 9, 1993, a search of Defendant Scherman's premises, where the computer and memory were located, was conducted. Pursuant to the Order, Defendant Scherman's computer and memory devices were seized, the memory copied and returned to Defendant Scherman, with the Sega games deleted. Keene Decl. ¶¶ 1–6.

41. The Court made substantial findings in its Order of December 9, 1993, in support of the restraining and seizure order, which appear to have been verified by the program copies and evidence obtained from the memory devices comprising the "MAPHIA" bulletin board, thus confirming the seizure of such evidence. Keene Decl. ¶¶ 7–21.

**686**

## CONCLUSIONS OF LAW

1. To the extent facts are included in this portion of the order, they are also deemed the Court's findings of fact, and visa versa.

2. This Court has jurisdiction of the causes of action arising under copyright law (under 17 U.S.C. § 101 *et seq.*), federal trademark law (under 15 U.S.C. § 1051 *et seq.*), and federal claims for unfair competition/false designation of origin (under 15 U.S.C. § 1125(a)) pursuant to 28 U.S.C. § 1338(a).

3. This Court has jurisdiction of the causes of action arising under California trade name law (under California Business & Professions Code § 14400 *et seq.*), and California unfair competition law (under California Business and Professions Code § 14210, 17200–17203) pursuant to 28 U.S.C. 1338(b).

4. Venue is proper in the federal district court where certain Defendants reside and where acts of trademark and copyright infringement occur. 28 U.S.C. 1391(b) and (c). Venue in the instant suit is proper in the Northern District of California.

## I. PRELIMINARY INJUNCTION

### A. *Legal standard*

5. Plaintiffs must demonstrate the following to be entitled to preliminary injunctive relief: (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that there exist serious questions regarding the merits and the balance of hardships tips sharply in their favor. *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir.1987); *Apple Computer, Inc. v. Formula Intern., Inc.*, 725 F.2d 521, 523 (9th Cir.1984).

### B. *Probable Success on the Merits*

#### Copyright Infringement

6. To establish a *prima facie* case of copyright infringement, Plaintiffs must prove (1) ownership of a valid copyright in the infringed work, and (2) "copying" by the Defendants. *See Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir.1977); *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 824 (11th Cir.1982); 3 Nimmer on Copyright, § 13.01 (1985).

7. Sega's certificates of registration establish a *prima facie* valid copyright in its video game programs. 17 U.S.C. § 410(c); *Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 523 (9th Cir.1984). Although the complaint and declaration of Jack Yang list specific copyrights infringed by Defendants, Plaintiffs seek and are entitled to an order with respect to all of their copyrighted video games. *See Encyclopaedia Britannica Educational Corp. v. Crooks*, 542 F.Supp. 1156, 1187–88 & n. 2 (W.D.N.Y.1982).

8. The unauthorized copying of copyrighted computer programs is *prima facie* an infringement of the copyright. *See MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir.1993), *cert. dismissed*, —— U.S. ——, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994).

9. Sega has established a *prima facie* case of direct copyright infringement under 17 U.S.C. § 501. Sega has established that unauthorized copies of its games are made when such games are uploaded to the MAPHIA bulletin board, here with the knowledge of Defendant Scherman. These copied games are thereby placed on the storage media of the electronic bulletin board by unknown users.

10. Sega has established that unauthorized copies of these games are also made when they are downloaded to make additional copies by users, which copying is facilitated and encouraged by the MAPHIA bulletin board. *See MAI Systems, supra*, 991 F.2d at 519.

11. "[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another," may be held liable as a contributory infringer. *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir.1987) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).

12. Even if Defendants do not know exactly when games will be uploaded to or

downloaded from the MAPHIA bulletin board, their role in the copying, including provision of facilities, direction, knowledge and encouragement, amounts to contributory copyright infringement. *Id.; see also Playboy Enterprises, Inc. v. Frena,* 839 F.Supp. 1552, 1555–56 (M.D.Fla.1993).

13. Sega has established a likelihood of success on the merits of showing a *prima facie* case of direct and contributory infringement by Defendants' operation of the MAPHIA bulletin board.

14. Sega has also established a strong likelihood of success on the merits of showing a *prima facie* case of contributory infringement by Defendants' advertising, sale and distribution, directly or through its affiliated PARSEC bulletin board network, of video game copiers. *See Atari, Inc. v. JS & A Group, Inc.,* 597 F.Supp. 5 (N.D.Ill.1983).

■ 15. Because of the large number of users of the MAPHIA bulletin board, and the potential of each user to download an unknown number of copies of Sega video game programs through the MAPHIA bulletin board, Defendants' infringement cannot be viewed as a *de minimus* circumstance. *See Fisher v. Dees,* 794 F.2d 432, 434–35 (9th Cir.1986); *Playboy v. Frena, supra,* 839 F.Supp. at 1557–58.

16. Defendants raise fair use as a defense to copyright infringement. 17 U.S.C. § 107 states:

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified in that section, for purposes such as criticism, comment, news reporting, teaching . . ., scholarship, or research is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use . . .;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or the value of the copyrighted work.

17. "To invoke the fair use exception, an individual must possess an authorized copy of a literary work." *Atari Games Corp. v. Nintendo of America, Inc.,* 975 F.2d 832, 843 (Fed.Cir.1992). Defendant Scherman has stated that he does not own any Sega game cartridges. Scherman Decl. at 1.

■ 18. When copying is for the purpose of making multiple copies of the original, and thereby saving users the expense of purchasing additional authorized copies, this militates against a finding of fair use under the purpose of the use factor. *American Geophysical Union v. Texaco, Inc.,* 802 F.Supp. 1, 14–16 (S.D.N.Y.1992).

■ 19. Because users of the MAPHIA bulletin board are likely and encouraged to download Sega games therefrom to avoid having to buy video game cartridges from Sega, by which avoidance such users and Defendants both profit, the commercial purpose and character of the unauthorized copying weighs against a finding of fair use. *See Atari, Inc. v. JS & A Group, Inc.,* 597 F.Supp. 5, 8 (N.D.Ill.1983); *c.f. Lewis Galoob Toys, Inc. v. Nintendo of America, Inc.,* 964 F.2d 965, 971 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1582, 123 L.Ed.2d 149 (1993).

20. Because Sega video game programs are for entertainment uses and involve fiction and fantasy, consideration of the nature of the copyrighted work weighs against a finding of fair use. *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 563, 105 S.Ct. 2218, 2232, 85 L.Ed.2d 588 (1985); *Playboy, supra,* 839 F.Supp. at 1556–57.

21. Because it appears that the *entire* game programs are copied when Sega video game programs are transferred over the MAPHIA bulletin board, consideration of the amount and substantiality of the portion copied weighs against a finding of fair use. *Id.* at 1557–58; 3 Nimmer § 13.05[A][3]; *see also American Geophysical Union, supra,* 802 F.Supp. at 17.

22. "The fourth factor, the effect of the use upon the market for or value of the

copyrighted work, 'is undoubtedly the single most important element of fair use.' " *Los Angeles News Service v. Tullo,* 973 F.2d 791, 798 (9th Cir.1992) (quoting *Harper & Row, supra,* 471 U.S. at 566, 105 S.Ct. at 2233).

23. "[T]o negate fair use one need only show that if the challenged use 'should become widespread, it would adversely affect the *potential* market for the copyrighted work.' " *Harper & Row, supra,* 471 U.S. at 568, 105 S.Ct. at 2234 (quoting *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 451, 104 S.Ct. 774, 793, 78 L.Ed.2d 574 (1984)) (emphasis in original); *Playboy, supra,* 839 F.Supp. at 1557–58; *Lotus Dev. Corp. v. Borland Int'l, Inc.,* 831 F.Supp. 223, 243 (D.Mass.1993).

24. Based on Defendants' own statement that 45,000 bulletin boards like MAPHIA operate in this country, it is obvious that should the unauthorized copying of Sega's video games by Defendants and others become widespread, there would be a substantial and immeasurable adverse effect on the market for Sega's copyrighted video game programs. Consideration of the effect on the market for Sega's copyrighted works weighs heavily against a finding of fair use. *See* Def.'s Opp. at 7.

25. Accordingly, it is unlikely that Defendants will be able to establish a fair use defense at trial, and Sega is likely to succeed in establishing that Defendant's MAPHIA bulletin board activities represent direct and contributory infringement under the Copyright Law.

### Federal Trademark Infringement

26. A *prima facie* case for trademark infringement under the Lanham Act is established by a showing that (1) the mark is owned by or associated with a particular plaintiff and (2) that the Defendants' use of the mark is likely to cause confusion or mistake among the public. *See Jockey Club, Inc. v. Jockey Club of Las Vegas,* 595 F.2d 1167 (9th Cir.1979).

27. There is no question that the trademarks at issue are owned by Sega. *See* Compl.Exhs. A, F. Sega's federal trademark registration is conclusive evidence of Sega's exclusive right to use the registered marks in commerce. 15 U.S.C. § 1115(a).

28. Plaintiffs need not prove that any person actually has been mistaken because of Defendants' use; all that is required is "likelihood" of confusion, mistake or deception. *New West Corp. v. NYM Co. of California, Inc.,* 595 F.2d 1194, 1201–02 (9th Cir.1979). Plaintiffs need not show that users of the bulletin boards are likely to be confused. Once a product is put into commerce, confusion, mistake, or deception occurring at some future time is sufficient to establish liability for trademark infringement. *Rolex Watch, U.S.A., Inc. v. Canner,* 645 F.Supp. 484, 492 (S.D.Fla.1986).

29. When a game copied from Defendants' bulletin board is played, that game begins with a screen showing the federally registered SEGA trademark and the Sega logo. Confusion, if not on the part of bulletin board users, is inevitable on the part of third parties who may see the copied games after they enter the stream of commerce.

30. Accordingly, Sega is likely to prevail on the merits in establishing that Defendant's use of Sega's trademark on its files sections and file descriptors, and on programs made available and encouraged for downloading from Defendant's MAPHIA bulletin board, constitutes trademark infringement under the Lanham Act.

### False Designation of Origin

31. To prevail on its unfair competition claims under the Lanham Act, Sega must similarly establish that the public is likely to be deceived or confused by the similarity of the marks. *New West Corp., supra,* 595 F.2d at 1201.

32. Sega has established a *prima facie* case of federal unfair competition and false designation of origin. 15 U.S.C. § 1125(a).

### C. Irreparable Harm

33. A showing of reasonable likelihood of success on the merits of a copyright infringement claim raises a presumption of irreparable harm. *Apple Computer, supra,* 725 F.2d at 525.

34. Damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law. *International Jensen, Inc. v. Metrosound U.S.A., Inc.,* 4 F.3d 819, 827 (9th Cir.1993); *Processed Plastic Co. v. Warner Communications,* 675 F.2d 852, 858 (7th Cir.1982).

35. Accordingly, Plaintiffs need not make a detailed showing of irreparable injury since they have demonstrated a *prima facie* case of copyright and trademark infringement. *Apple Computer, supra,* 725 F.2d at 525; *Processed Plastic, supra,* 675 F.2d at 858.

36. It is clear that Defendants' activities subject Sega to the possibility of irreparable harm. Each illegal copy of a Sega game which Defendants distribute deprives Sega of revenue. Moreover, distribution of altered, inferior copies of Sega games and of confidential, pre-release unperfected games subjects Sega to damage to its business and reputation. *See Franklin Mint, Inc. v. Franklin Mint, Ltd.,* 331 F.Supp. 827, 830 (E.D.Pa.1971); *Consumers Union of U.S., Inc. v. Theodore Hamm Brewing Co.,* 314 F.Supp. 697, 700 (D.Conn.1970).

37. Accordingly, Sega has established that Defendants' operation of the MAPHIA bulletin board and sale of video game copiers as above described have caused and are likely to continue to cause irreparable harm to Sega.

### D. *Conclusion*

38. Sega has shown a high probability of success on the merits at trial, and a likelihood of irreparable injury to Plaintiffs, Plaintiffs' market and reputation.

39. Accordingly, Sega has established that it is entitled to preliminary injunctive relief under 15 U.S.C. § 1116 and under principles of equity.

### II. COLLECTION AND SEIZURE OF EVIDENCE

40. Defendants allege that Sega's access to the MAPHIA bulletin board through use of a pseudonym constituted a violation of the Electronic Communications and Transactional Records Act, and maintains that the Seizure Order was thereby inappropriate. The Electronic Communications and Transactional Records Act makes it illegal to "intentionally access without authorization a facility through which an electronic communication service is provided." 18 U.S.C. § 2701(a).

41. Because the MAPHIA bulletin board is open to the public, and normally accessed by use of an alias or pseudonym, it would appear that Sega's employee's pseudonymous access was authorized. Furthermore, the Act contains an exception for access which is authorized by a user of an electronic service with respect to a communication for that user. 18 U.S.C. 2701(c)(2). The Sega employee's access appears to have been authorized directly or indirectly by a MAPHIA user whose authorized status is not disputed. Therefore, no violation of 18 U.S.C. § 2701(a) took place.

42. Moreover, the fact that a plaintiff's employee, in the course of investigating a copyright or trademark infringement, fails to identify herself as such to the defendant does not provide a defense to the infringement when such identification would have defeated the investigation. *Reebok International Ltd. v. Jemmett,* 6 USPQ2d 1715, 1988 WL 106933 (S.D.Cal.1988); *Olan Mills, Inc. v. Linn Photo Co.,* 795 F.Supp. 1423 (N.D.Iowa 1991).

43. Defendant Scherman challenges the description of his copies of Sega's programs as "counterfeit" and maintains that the Seizure Order is thereby inappropriate.

44. There is support for the characterization of the Sega games transferred over the MAPHIA bulletin board as "counterfeit" under the Lanham Act. *See* 15 U.S.C. § 1127.

45. As stated by Judge Smith at the hearing on December 17, 1993, the temporary restraining and seizure order was issued on December 9, 1993 in compliance with the Lanham Act and not in violation of the Fourth Amendment. *Dealer Advertising Development, Inc. v. Barbara Allan Financial Advertising,* 197 USPQ 611, 614, 1977 WL 22753 (W.D.Mich.1977).

46. The *ex parte* temporary restraining order and seizure order issued by Judge Smith on December 9, 1993, is confirmed as appropriate procedure here for Defendant's computer bulletin board. The counterfeit and unauthorized copies of Sega's video game programs were believed to be, and found to be, located on Defendant Scherman's premises, and such items were found on that Defendant's computer and memory.

## PRELIMINARY INJUNCTION AND ORDER CONFIRMING SEIZURE

The Court hereby enters an Order confirming seizure and for Preliminary Injunction as follows:

1. The seizure executed on December 11, 1993, at Defendant Chad Scherman's address, pursuant to the Court's Order dated December 9, 1993, is hereby confirmed. During the pendency of this action, the software, programs, data, memory, duplicating and decoding and computing machines, and other infringing merchandise seized pursuant to the provisions of that Order shall be impounded in the custody of Plaintiffs' counsel, a Special Master or other substitute custodian to be agreed upon by the parties. If the parties cannot agree upon a custodian, they shall bring an appropriate motion before Magistrate Judge Woodruff;

2. Defendants Chad Scherman and the computer bulletin board Maphia and d/b/a MAPHIA, MAPHIA TRADING COMPANY, their directors, principals, officers, agents, servants, employees, systems operators, successors and assigns, and all those in active concert or participation with them, are hereby enjoined, during the pendency of this action, from engaging in any of the following:

(a)(i) imitating, copying or making unauthorized use of Plaintiffs' registered and unregistered trademarks, including but not limited to the SEGA trademark or the works protected by Plaintiffs' copyrights or which are confidential and proprietary to Plaintiffs;

(ii) manufacturing, producing, distributing, circulating, selling or bartering, offering for sale, advertising, promoting, displaying or transferring or facilitating the transfer of, any computer video games bearing any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiffs' SEGA trademark or Plaintiffs' copyrighted works, including Sega's video game titles, or video game copiers which are designed to copy computer video games bearing the SEGA trademark or Plaintiff's copyrighted works;

(iii) using any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiffs' trademarks or of Plaintiffs' copyrighted works in connection with the promotion, advertisement, display, barter, sale, offering for sale or barter, manufacture, production, circulation, transfer or distribution, by any electronic, computer, or other means, of any product or computer game;

(iv) engaging in any other activity constituting an infringement of Plaintiffs' trademarks or copyrights, or any other activity causing unfair competition with Plaintiffs;

(v) using any false designation of origin or false description or representation which is likely to lead the public erroneously to believe that computer video games or other products maintained, distributed, transferred, made available for transfer, offered for sale, sold, displayed or advertised by Defendants or made accessible in any manner to users of The Sewer Line, MAPHIA, PSYCHOSIS, or other computer bulletin boards, is in any manner associated or connected with Plaintiffs or Plaintiffs' genuine products, or is sold, manufactured, licensed, sponsored, approved, or authorized by Plaintiffs, when such is not true;

(vi) otherwise displaying, transferring or making available for downloading or transfer any computer video games or other software or data products containing unauthorized duplications or copies of Plaintiffs' copyrighted computer video games or bearing Plaintiffs' registered SEGA or other trademarks;

(vii) assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities

referred to in subparagraphs (i) through (vi) above; and

(viii) maintaining, retaining or allowing others to maintain or retain in any file or other format accessible to users or subscribers of MAPHIA, PSYCHOSIS, or any bulletin board, any version of Plaintiffs' trademarks or Plaintiffs' copyrighted works, whether in any computer, computer memory, magnetic storage device, disk, tape, or otherwise—including without limitation, retention in any manner that can be accessed, copied, distributed or counterfeited by others;

(b) moving, (except to deliver to Plaintiffs' counsel or the substitute custodian), destroying, erasing or otherwise disposing of, any video games, data or indexes or directories embodying any unauthorized duplications of Plaintiffs' copyrighted video games or any video games, tapes, memory media, or other merchandise or data, games, indexes or directories, bearing Plaintiff's trademarks or trade names;

(c) removing (except to deliver to Plaintiff's counsel or the substitute custodian), erasing, destroying, or otherwise disposing of any manufacturing, copying or duplicating or decoding apparatus or any databases, directories or business records or documents relating in any way to MAPHIA or any other bulletin boards operated by Defendants, or the manufacture, duplication, acquisition, transfer, downloading, uploading, purchase, distribution, renting, or sale of copiers or computer video games embodying duplications of Plaintiffs' copyrighted game programs and/or bearing Plaintiffs' SEGA or other trademarks or trade names;

3. Defendants shall deliver up to Plaintiffs' counsel, Neil A. Smith, Limbach & Limbach, 2001 Ferry Building, San Francisco, California 94111, or to the substitute custodian, for impoundment any unauthorized copies of Plaintiffs' copyrighted video games or video games bearing the SEGA trademark and video game copiers, remaining in their possession, custody or control;

4. Plaintiffs shall maintain the bond surety previously posted in the amount of $50,000.00 for this Preliminary Injunction as security determined adequate for this Preliminary Injunction.

IT IS SO ORDERED.