**RELIGIOUS TECHNOLOGY CENTER, Plaintiff,**

v.

**Arnaldo Pagliarina LERMA, Digital Gateway Systems, the Washington Post, Marc Fisher, and Richard Leiby, Defendants.**

**Civ. A. No. 95–1107–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Aug. 30, 1995.

---

Bruce B. McHale, Chamowitz & Chamowitz, P.A., Alexandria, VA, R.V. Lupo, Susan Somers Neal, Edward E. Kubasiewicz, William Brinks Hofer Gilson & Lione, Washington, DC, and Earl C. Cooley, Cooley, Manion, Moore & Jones, Boston, MA, and Helena K. Kobrin, North Hollywood, CA, for plaintiff, Religious Technology Center.

Christopher Wolf, Proskauer Rose Goetz & Mendelsohn, Washington, DC and John P. Corrado, Hazel & Thomas, Alexandria, VA, for defendant, the Washington Post.

### MEMORANDUM OPINION

BRINKEMA, District Judge.

This case comes before the Court on plaintiff's Motion for a Temporary Retraining Order and a Preliminary Injunction; for Impoundment of Infringing Articles; and for Expedited Discovery against the defendants The Washington Post ("the Post"), Marc Fisher, and Richard Leiby (collectively "the Post defendants").

Plaintiff alleges that it holds the license to the copyrights of the writings of L. Ron Hubbard, the founder of the Church of Scientology. Defendant Lerma is a former church member who plaintiff accuses of infringing its copyright on various Advanced Technology ("AT") documents by posting these documents on the Internet. Defendant Digital Gateway Systems ("DGS") is defendant Lerma's access provider to the Internet. Plaintiff originally filed this action against defendants Lerma and DGS to enjoin the posting of the AT documents on the Internet. On August 11, 1995, this Court entered a Temporary Restraining Order, Order to Show Cause Regarding a Preliminary Injunction, Order for Impoundment, and Order for Expedited Discovery. The Court also ordered the Clerk to issue a writ of seizure for defendant Lerma's personal computer equipment,

floppy disks, and any copies of the copyrighted works of L. Ron Hubbard.

At some point after the seizure, plaintiff learned that defendant Lerma had given copies of the AT documents in issue to the Post. When the plaintiff confronted the Post about these documents and advised that they might be stolen, the Post voluntarily turned them over to the plaintiff. However, on August 14, 1995, the Post sent a reporter to the Clerk's office of the United States District Court for the Central District of California to copy a public court file which allegedly contained copies of the same AT documents. The documents were contained in the record of a case pending in that jurisdiction and were not then subject to a sealing or protective order. The file was subsequently sealed, however that later sealing is of no moment to the pending motion.

On August 19, 1995, the Post published an article written by defendant Marc Fisher regarding this lawsuit and the seizure of Lerma's computer equipment (hereinafter "the Article"). The Article contained several brief quotations from the AT materials obtained from the California case.

On August 22, 1995, plaintiff filed a First Amended Verified Complaint For Injunctive Relief and Damages for (1) Copyright Infringement; and (2) Trade Secrets Misappropriation, adding the Post, Fisher, and Leiby as defendants. Along with the First Amended Verified Complaint, plaintiff filed the pending motion seeking to enjoin the Post defendants from copying, disclosing, using, displaying, or reproducing the AT materials obtained from the California case. A hearing was held on August 25, 1995 and the matter was taken under advisement.

I. Balance of Harms

■ The decision to grant or deny plaintiff's request for interlocutory relief is determined by the "flexible interplay" of four factors: the risk of irreparable harm to the plaintiff if relief is denied, the risk of harm to the defendant if relief is granted, the likelihood of the plaintiff's success on the merits, and the interest of the public. *Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d 189, 196 (4th Cir. 1977) (citations omitted). The first step in

our analysis is to balance the risk of irreparable harm to the plaintiff against the risk of harm to the defendant. *Id.* at 195.

■ The harm to the Post defendants if the plaintiff's motion is granted is self-evident. This lawsuit, and similar actions in other jurisdictions, and the conflict between the Church of Scientology and its critics are newsworthy subjects. These defendants are professional news reporters and publishers, and the relief sought by plaintiff would prohibit them from using the documents at issue in reporting on these matters. Such limitations on their ability to report on the news would clearly work a profound harm on these defendants. Moreover, to the extent that the requested relief would place limitations on the defendants' reporting, it would constitute a prior restraint on expression. *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). There is a strong presumption against the constitutionality of such action. *New York Times Co. v. United States*, 403 U.S. 713, 713–14, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1971). As a result, the plaintiff "carries a heavy burden of showing justification for the imposition of such a restraint." *Id.* Plaintiff has not met that burden in this case.

In *New York Times Co. v. United States*, the United States government sought to enjoin the New York Times and the Washington Post from publishing a classified study of the government's decision-making process with regard to its policy towards Viet Nam. The classified document, known as the Pentagon Papers, contained military and diplomatic secrets, the disclosure of which posed a potential threat to national security. *See id.* at 730–32, 91 S.Ct. at 2150 (White, J., concurring) ("revelation of these documents will do substantial damage to public interests"). Despite this threat, a plurality of the Court found that the government had failed to overcome the presumption against prior restraint.

Plaintiff argues that dissemination of the AT documents would cause an irreparable injury, namely future copyright infringement and trade secret misappropriation. This is the sole justification plaintiff offers to sup-

port its argument for prior restraint of the press. If a threat to national security was insufficient to warrant a prior restraint in *New York Times Co. v. United States,* the threat to plaintiff's copyrights and trade secrets is woefully inadequate.

Moreover, plaintiff's arguments to date suggest that the extent to which plaintiff would be harmed by any future copyright infringement or trade secret misappropriation is at best slight. The documents in question are so esoteric as to require years of training in Scientology to understand them. As a result, the only financial harm that the plaintiff could suffer as a result of any alleged infringement would be if Church followers chose to forsake the Church's elaborate system of instruction in favor of self-administration of the texts. Scientology's status as a religious organization undermines any theory of loss that would depend on its followers' desire to cheat the Church by obtaining these teachings through unauthorized means. Accordingly, this Court fails to recognize any significant risk of financial loss to the plaintiff if the motion is denied.

## II. Likelihood of Success on the Merits

 Where, as here, the balance of harms favors the defendant, the likelihood of the plaintiff's success on the merits assumes heightened significance. *Blackwelder,* 550 F.2d at 195 ("The importance of probability of success increases as the probability of irreparable injury diminishes.") Where the likelihood of irreparable injury to the plaintiff is merely "possible," the plaintiff's likelihood of success on the merits can be determinative. *Id.* Without opining on the merits of this case, it can fairly be said that plaintiff's success is far from a foregone conclusion.

 Plaintiff asserts two claims against the Post defendants: copyright infringement and trade secret misappropriation. As a defense to the copyright infringement claim, defendants argue that plaintiff's allegations are insufficient to state a claim of copyright infringement because the plaintiff has not shown a substantial similarity between the Article and any copyrighted text and because the quotations contained in the Article represent a *de minimis* use of the allegedly copyrighted works. Furthermore, the Post defendants argue that any copying of the AT documents was within the fair use exception of the Copyright Act. 17 U.S.C.A. § 107 (West Supp.1995). While the questions of whether the subject documents are copyright protected and whether defendants' acts constituted a copying will be significant issues in this case, we assume for the purposes of this motion that the Post defendants copied copyrighted materials, and solely address the fair use issue. The fair use doctrine allows the reasonable use of copyrighted materials and is designed to balance the exclusive rights of the copyright holder with the public's interest in dissemination of information regarding areas of universal concern. *See Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 205–206 (2d Cir.1979).

Section 107 of the Copyright Act provides:

the fair use of a copyrighted work ... for purposes such as criticism, comment, *news reporting,* teaching ... scholarship, or *research,* is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole;

(4) the effect of the use upon the potential market for or value of the copyrighted work.

The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

17 U.S.C.A. § 107 (West Supp.1995) (emphasis added).

The purpose of defendants' use of the subject work was two-fold. The Article constituted news reporting, one of the specific uses included in the statute as examples of fair use. The August 14, 1995 copying constituted research for the Article. Defendants ar-

gue that the copying of the California court file should be considered together with the publication of the Article because "[n]ews gathering is an essential aspect of news reporting. The Post has gathered a copy of the materials in question and those materials, unquestionably, are news." Memorandum of The Washington Post, Marc Fisher, and Richard Leiby in Opposition to Plaintiff's Motion for a Temporary Restraining Order at 19 (hereinafter "Post Memorandum"). Indeed, the Post's copying of the California court file can easily be viewed as research for the Article and, therefore, as an integral part of that act of news reporting. In addition, an accurate copy of the AT documents was necessary for the Post defendants' ability to accurately report on, and quote from, their contents.

The scope of the fair use doctrine is greater with respect to factual works than creative or literary works. Without having reviewed the AT documents, this Court is at a disadvantage with regard to classifying them as either factual or expressive. Even courts with fuller records than this have encountered difficulty in classifying Hubbard's writings. As the Second Circuit stated in *New Era Publications Int'l v. Carol Publishing Group*, 904 F.2d 152, 158 (2d Cir.), *cert. denied*, 498 U.S. 921, 111 S.Ct. 297, 112 L.Ed.2d 251 (1990), "reasonable people can disagree over how to classify Hubbard's works." However, that court also concluded that the works "deal with Hubbard's life, his views on religion, human relations, the Church, etc.—[and] are more properly viewed as factual or informational." *Id.* at 157. The United States District Court for the Southern District of California is of another view, however. In *Bridge Publications, Inc. v. Vien*, 827 F.Supp. 629, 636 (S.D.Cal.1993), the court stated that "[t]he undisputed evidence shows that L. Ron Hubbard's works are the product of his creative thought process, and not merely information."

In the instant litigation, plaintiff has characterized the AT documents more as informational than as creative fiction. Specifically, the First Amended Verified Complaint describes Hubbard's writings as "works on

applied religious philosophy and spiritual healing technology, including training materials and course manuals of the Scientology religion." Amended Complaint at ¶ 26. Therefore, at this point, this Court adopts the Second Circuit's view, and finds that because the AT documents appear to be factual or informational the broader view of fair use is appropriate in this case.

Plaintiff argues that the unpublished nature of some of the AT documents militates against a finding of fair use, relying on the Supreme Court's decision in *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) to support this argument. In *Harper & Row*, the defendant published excerpts from an unpublished manuscript of the autobiography of Gerald Ford. The defendant's article was timed to "scoop" a competing publication that had agreed to purchase the exclusive right to print excerpts of the work. The Court noted that the fact that a work is unpublished is a "critical element" of its nature and that "the scope of fair use is narrower with respect to unpublished works." *Id.* at 564, 105 S.Ct. at 2232. The facts of the *Harper & Row* case differ strikingly from the case at hand. In the *Harper & Row* decision the defendant timed publication of its article to deprive the planned publication of its full impact. Here, no such motivation exists. Moreover, the Article contained only minimal excerpts from plaintiff's documents and can in no way be said to have deprived the plaintiff of the right of first publication, on which the *Harper & Row* decision is largely based. In addition, after the Supreme Court's decision in *Harper & Row*, Congress amended Section 107 of the Copyright Act to make clear that "[t]he fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors." 17 U.S.C.A. § 107 (West Supp.1995). Assuming that all of the AT documents at issue are unpublished, the Post defendants' use of those documents does not implicate the concerns expressed by the Court in *Harper & Row* and therefore their unpublished nature plays a minimal role in this Court's consideration.

With regard to the amount of the work used, defendants' Article quoted only a minute portion of the AT documents. The August 14, 1995 copying of the California court files involved a considerably larger amount of the subject works: allegedly 103 pages were copied. However, although a large number of pages were copied, only a few lines of the documents were quoted in the Article. This Court therefore finds that the sheer quantity of the documents copied does not defeat the Post defendants' claim of fair use.

With respect to the effect of the Post defendants' use on the market value of the AT documents, it is doubtful that the defendants' copying can have a significant negative effect. As mentioned above, the Article contained only scant quotations from the AT documents. Scientologists in search of advanced training could not possibly consider these short quotes as substitutes for the full texts. Furthermore, the affidavits filed in support of plaintiff's complaint and motions provide that part of the Advanced Technology program involves "confidential counselling, or 'auditing' from a trained minister of the Church." McShane Aff. at ¶¶ 9–10. Even the confidential levels that do not require auditing involve supervision "on each step to ensure that [the Scientologist] delivers the Advanced Technology to himself correctly and that he obtains the exact expected results from each level." *Id.* at ¶ 11. Accordingly, the "market" for these writings does not exist independently of the Church's services.

Finally, the plaintiff argues that the Post defendants cannot enjoy the shelter of the fair use doctrine because their acquisition of the subject documents was unlawful. Plaintiff's argument stems from its assertion that, as a result of stringent security measures, any copy of the AT documents existing outside the Church was necessarily at one time stolen. Plaintiff further argues that the unlawful acquisition of copyrighted materials precludes any fair use defense. *See Atari*

*Games Corp. v. Nintendo of America, Inc.,* 975 F.2d 832, 843 (Fed.Cir.1992);[1] *Sega Enterprises Ltd. v. Maphia,* 857 F.Supp. 679, 687 (N.D.Cal.1994) (citing *Atari Games,* 975 F.2d at 843). However, unlike the facts in the cases relied on by plaintiff, the facts in this case are that the Post defendants obtained the documents from a legitimate source. When the Post defendants obtained the copies at issue, the AT documents were contained within the unsealed files of the United States District Court for the Central District of California. As such, they were available to the general public at the office of the Clerk of the Court.

Defendants argue that the copying of the AT documents, by the Clerk of the Court on defendants' behalf, cannot be infringement "given the ancient common law right of access to publicly filed court documents and the recognized importance of granting access to such documents to the press." Post Memorandum at 15. Indeed, the Supreme Court has explicitly recognized the right of the press to publish facts contained in public court records. In *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), the Supreme Court held that the First and Fourteenth Amendments barred a cause of action for damages for invasion of privacy for publication of information contained in an open court record. In *Cox,* a reporter employed by the defendant included the name of a deceased rape victim in a news report of the trial of her alleged attackers. The father of the victim sued the broadcast company for invasion of privacy, relying in part on a state statute making it a misdemeanor for any news media to publish the name of any rape victim. The Supreme Court, relying on the "special protected nature of accurate reports of judicial proceedings" and the inclusion of the information in the public record, found that the defendant's actions were constitutionally protected. *Id.* at 492, 95 S.Ct. at 1044–47. In so holding, the Court stated:

---

1. In the *Atari* case, the defendant misappropriated a copy of the plaintiff's source code by obtaining a copy from the Copyright Office in violation of Copyright Office regulations. The court in that case stated that "[t]o invoke the fair use exception, an individual must possess an autho-rized copy of a literary work." *Atari Games,* 975 F.2d at 843 (citing *Harper & Row,* 471 U.S. at 563–64, 105 S.Ct. at 2232 (holding that knowing exploitation of purloined manuscript is not compatible with "good faith" and "fair dealings" underpinnings of fair use doctrine)).

By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served. Public records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by the reporting of the true contents of the records by the media.

*Id.* at 495, 95 S.Ct. at 1046.

Plaintiff argues that the Post defendants had no right of access to the AT documents in the California court file because those documents were never relevant to that litigation and had been dumped into the record merely for the purpose of improperly making them available to the public. Plaintiff's argument neglects the fact that at the time that the Post obtained copies of those documents from the public court records, no sealing order was in place. In fact, the plaintiff had moved the district court to seal the file and the court had denied that request.

When the district court refused to seal the file, plaintiff appealed that decision to the Ninth Circuit which reversed the district court in an unpublished opinion on August 30, 1994. The Ninth Circuit remanded the case with instructions to the lower court to determine whether the disputed documents contain trade secrets or were irrelevant to any of the issues in the case. In reaching their decision, the Ninth Circuit recognized the tension between the public's right of access to judicial records and the supervisory power of the court to ensure that its files not become "vehicle[s] for improper purposes." *Church of Scientology Int'l v. Fishman,* No. 94–55443, 1994 WL 467999 (9th Cir. Aug. 30, 1994). However, despite these concerns, the court's opinion did not direct the lower court to seal the file, which remained open to the public until after the Post copied the documents. Given the well recognized public right of access to court records and these facts, there is little likelihood that the plaintiff will prevail on the argument that the Post had no right of access to the AT documents in the court file on August 14, 1995.

Our discussion of the fair use doctrine must be understood in the context of the pending motion. We do not here rule on the merits of plaintiff's claim, nor on the Post defendants' response. Rather, at this preliminary stage of the proceedings the analysis favors the defendants, ruling out a finding that plaintiff has shown a likelihood of success on the merits sufficient to overcome the likelihood of harm to the defendants.

■ The likelihood of success of the plaintiff's trade secret misappropriation claim is at least as uncertain as the copyright claim. To prevail on a trade secret misappropriation claim, the plaintiff must prove that the AT documents are indeed trade secrets. In Virginia, a "trade secret" is defined as information that:

[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and ... Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Va.Code Ann. § 59.1–336 (Michie 1992).

Unquestionably, the plaintiff has taken extraordinary measures to try to maintain the secrecy of the AT texts. Plaintiff and the Church of Scientology employ numerous and elaborate security measures to prevent church members from removing the texts from the Church. In addition, while the California court file remained unsealed, Church members conducted a daily vigil in which they signed out the file and retained it until the Clerk's office closed. Despite these efforts, the AT documents have escaped into the public domain and onto the Internet. Significantly, the record in this case indicates that defendant Lerma is not the only source of AT documents on the Internet. Accordingly, for the purposes of this motion, it would seem that plaintiff cannot establish that the AT documents are "not generally known." Additionally, plaintiff has not demonstrated that the AT documents provide plaintiff with any economic advantage over any competitors.

### III. The Public Interest

The final consideration dictated by the *Blackwelder* opinion is the public interest.

This factor weighs heavily in favor of denying the plaintiff's motion. The public interest lies with the unfettered ability of the Post to report on the news. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572–73, 100 S.Ct. 2814, 2825, 65 L.Ed.2d 973 (1980) (stating that print and electronic media are the public's chief source of information about trials and that media coverage of legal proceedings contributes to public understanding of the rule of law) (citing *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 586–87, 96 S.Ct. 2791, 2816, 49 L.Ed.2d 683 (1976) (Brennan, J., concurring in judgment)).

## IV. Conclusion

Having performed the analysis required under *Blackwelder*, this Court concludes that the plaintiff's Motion for a Temporary Retraining Order and a Preliminary Injunction; for Impoundment of Infringing Articles; and for Expedited Discovery against the Post defendants must be denied. The balance of harms is heavily tilted towards the defendants, and the plaintiff's likelihood of success on the merits is insufficient to right the scale. Finally, the public interest and the constitutional presumption against prior restraint weigh heavily against the plaintiff. For these reasons, plaintiff's motion is DENIED.

Defendants must maintain the status quo as to the possession of the AT documents and may make fair use thereof. However, defendants are prohibited from making additional copies of the AT documents and distributing or transferring the documents. Should the defendants incorporate or attach any of the AT documents to their papers in this action, such filings must be made under seal.